Slip Op. 01-89

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

-----------------------------------------------------------x

THE HUMANE SOCIETY OF THE   :
UNITED STATES, HUMANE SOCIETY
INTERNATIONAL, AND DEFENDERS   :     **Court No.  98-03-00557**
OF WILDLIFE,

                   :

        Plaintiffs,

                   :

        v.

                   :

GEORGE W. BUSH,  PRESIDENT,
DONALD L. EVANS, SECRETARY OF
COMMERCE, AND COLIN L. POWELL,  :
SECRETARY OF STATE,

                   :

        Defendants.      :

-----------------------------------------------------------x

[Application for attorneys' fees granted in part.]

Decided: July 23, 2001

*Earthjustice Legal Defense Fund,* (*Patti Goldman*), for Plaintiffs.

*Stuart E. Schiffer*, *John C. Cruden,* Acting Assistant Attorneys General, United States Department of Justice; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division (*Lucias B. Lau*); *Mark A. Brown*, Environment and Natural Resources Division, Wildlife and Marine Resources Section; *Violanda Botet*, Office of the Legal Advisor, United States Department of State, of counsel; *Margaret F. Hayes*, Assistant General Counsel for Fisheries, National Oceanic and Atmospheric Administration, United States Department of Commerce, of counsel, for Defendants.

## OPINION AND ORDER

**BARZILAY, JUDGE:**

### I. INTRODUCTION

This action arises in response to Plaintiffs' Humane Society of the United States, Humane

Society International, and Defenders of Wildlife ("Humane Society") *Application for Fees and Other*

*Expenses Pursuant to the Equal Access to Justice Act* ("*Pls.' Application*").  Humane Society asks

for fees and other expenses in connection with count three of its action in *Humane Society of the*

*United States v. Clinton*, 23 CIT ___, 44 F. Supp. 2d 260 (1999)  ("*Humane III*").  Defendants

("Government") oppose *Pls.' Application*, and claim that their opposition to this count was

"substantially justified," within the requirements of the Equal Access to Justice Act, 28 U.S.C. §

2412(d) (1997) ("EAJA").  Therefore, the Government claims that it should not be held responsible for

Humane Society's fees.  The court holds that the Government's position was not substantially justified

and awards attorneys' fees and expenses to Humane Society in the amount of $42,367.79.

## II. DISCUSSION

The court assumes familiarity with its earlier opinion in *Humane III,* but will briefly review the

facts relevant to the current action.  Humane Society's original claim had three counts.  *See Humane*

*III*, 44 F. Supp. 2d at 263.  It prevailed only on the third count, that the Secretary of Commerce had

"reason to believe" that illegal driftnet fishing was occurring in Italy in violation of the High Seas Driftnet

Fisheries Enforcement Act, 16 U.S.C. § 1826a(b)(1)(B) (1994)  ("Driftnet Act"), and that the

Secretary's failure to issue a formal identification of Italy to the President, as required by the Driftnet

Act, was arbitrary and capricious.  *See Humane III*, 44 F. Supp. 2d at 278.  The court ordered the

Secretary to identify Italy within 10 days.  *See id.* at 279.  Within the time provided by statute, Humane

Society moved for attorneys' fees and expenses for time devoted to count three in the amount of

$59,715.83.

The EAJA provides:

> a court shall award to a prevailing party other than the United States fees and other expenses, . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  A trial judge has discretion to award attorneys' fees and other expenses under the EAJA.  *See Chiu v. United* States, 948 F.2d 711, 713 (Fed. Cir. 1991).  To prevail on an application for fees, the EAJA "requires (1) that the claimant prevailed in the action, (2) that the government's position was not substantially justified, (3) that the award of attorney fees is not unjust, and (4) that the fee application is timely filed and supported by an itemized statement."  *Doty v. United States*, 71 F.3d 384, 385 (Fed. Cir. 1995) (citations omitted). *See also American Bayridge Corp. v. United States*, 25 CIT ___,___, 86 F. Supp. 2d 1284, 1285 (2001).

A prevailing party is one that has succeeded "on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit." *United States v. Modes*, *Inc.*, 18 CIT 153, 155 (1994) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1982).  The Government does not dispute that Humane Society is the prevailing party for count three of the action.  *See Defs.' Resp. to the Application for Fees and Other Expenses Pursuant to the Equal Access to Justice Act Filed by The Humane Society of the United States* ("*Defs.' Resp.*") at 3-4.  Humane Society's application was timely filed and supported by an itemized statement.  *See* 28 U.S.C. § 2412(d)(1)(B) (requiring parties to file the application within 30 days of the final judgment in the action and specifying the requirements of the application.)  The Government does not contend that awarding fees would be unjust due to special circumstances.  The only issue currently before the court is whether the

Government's position was substantially justified in its opposition to the count on which Humane Society prevailed, and if it was not substantially justified, what the proper amount of fees should be.

**A.  The Government's Position Was Not "Substantially Justified"**

The phrase "substantial justification" means "'justified in substance or in the main'– that is, justified to a degree that could satisfy a reasonable person." *Chiu*, 948 F.2d at 715 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  The party's position must have a reasonable basis in law and in fact.  *Id.*  The "government bears the burden of establishing that its position was substantially justified or that special circumstances should preclude an award under the EAJA." *Traveler Trading Co. v. United States*, 13 CIT 380, 381, 713 F. Supp. 409, 411 (1989).  If  the Government does not meet its burden, the court must grant the application for fees and expenses.  *See id.*  That the Government lost on the issue should not raise a presumption that its position was not substantially justified.  *See American Bayridge*, 86 F. Supp. 2d at 1285.  The decision to award fees should be reached independent of the merits by examining the Government's position and behavior with the EAJA requirements in mind.  *See Ferro Union, Inc. v. United States*, No. 99-143, 1999 Ct. Int'l Trade LEXIS 137 at * 8 ( Dec. 30, 1999).  The Government must prove that it has not pressed a tenuous position without factual or legal foundation.  *See Sigma Corp. v. United States*, 20 CIT 852, 857, 936 F. Supp. 993, 998 (1996).

In *Humane III*, the Government argued that the Secretary of Commerce had no "reason to believe" that Italian nationals or vessels were continuing large-scale driftnet fishing on the high seas, and therefore was not "arbitrary, capricious, and not in accordance with the Driftnet Act" in refusing to

identify Italy a second time. *Humane III*, 44 F. Supp. 2d at 277. The Government contends that because no numeric value for what constitutes a reason to believe was articulated, there is no discernible standard. Therefore, it was justified in arguing that nine confirmed sightings were insufficient to constitute a reason to believe for identification purposes. *See Defs.' Resp.* at 6-8. Furthermore, the Government contends that even if its overall position was not substantially justified, its position was justified until the Secretary of Commerce made his October 21, 1998 ruling on the 1998 Driftnet season. *See id.* at 8-10.

"*Humane II* clearly established the legal standard for what constitutes reason to believe under 16 U.S.C. § 1826a(b)(1)(B)." *Humane III*, 44 F. Supp. 2d at 279 (referring to *Humane Society v. Brown*, 20 CIT 277, 920 F. Supp. 178 (1996) ("*Humane II*")). In *Humane III*, the court concluded that mutual collateral estoppel governed interpretation of the reason to believe standard and "reject[ed] Defendants' continued strained reading of the Act." *Id.* at 274. The reason to believe standard was held not to require confirmed, "well documented reports" or "specific corroboration" of all elements, such as the vessel identification information. *Humane II*, 920 F. Supp. at 191. The court in *Humane II*, recognized the Supreme Court's long-standing opinion that "there is 'wide difference' between belief and knowledge" and pointed out the Government's failure to recognize this difference. *Id.* at 191-92 (citing *e.g. Iron Silver Mining Co. v. Reynolds*, 124 U.S. 374, 384 (1888). Belief is defined as "'knowledge of other facts which, although not amounting to direct knowledge, would cause a reasonable person, knowing the same facts, to reasonably conclude. . . .'" *Id.* at 191 (quoting *Criminal Offense Pattern Jury Instructions* 21 at 44, 25 (11th Cir. 1985).

In this case, the evidence was undisputed that large-scale driftnet fishing was continuing in Italy. *Humane III*, 44 F. Supp. 2d at 277. The court found that "nine confirmed sightings combined with the numerous allegation make the Secretary's refusal to identify Italy a second time arbitrary, capricious and not in accordance with the Driftnet Act." *Id.* The Government contends that because no numeric value for what constitutes a reason to believe is articulated, it was substantially justified in deducing that the evidence presented did not constitute a reason to believe. *Defs.' Resp.* at 7-8. The court does not agree. In view of *Humane II*'s definition of "reason to believe" in 1996, a reasonable person could not conclude that the Government was justified in arguing in 1998 that the Secretary had no reason to believe that large-scale driftnet fishing was continuing in Italy. Therefore, the court holds that Government's position was not substantially justified.

In the alternative, the Government contends that it was not pressing a tenuous position before the Secretary's ruling on the 1998 driftnet season because there were no confirmed 1998 sightings until after this ruling. Yet, the standard articulated in *Humane II*, while not setting a specific numeric standard, does not require "confirmed" sightings per se. *Humane II*, 920 F. Supp. at 192. Therefore, this position is not supported by the standards of *Humane II*. The sightings' confirmation did not significantly change the facts presented to the Government under the reason to believe standard. The court in *Humane III* also suggested that the Secretary's decision to withdraw the certification of Italy as a country which continued large-scale driftnet fishing was premature, if not arbitrary and unreasonable. *See Humane III*, 44 F. Supp. 2d at 274. Thus, the Secretary had reason to believe that large-scale driftnet fishing was continuing even before the October 21 ruling. *See id.* at 272. After evaluating the

overall position of the Government, the court holds that the Government's position was not substantially justified. Therefore, the court awards fees and other expenses to Humane Society under the EAJA.

## B. Proper Rate of Compensation for Attorneys

Section 2412(d)(2)(A)(ii) provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceeding involved, justifies a higher fee." It is undisputed that the appropriate cost of living adjustment increases this rate to $139 per hour. Humane Society requests this rate for Yuki Ishizuka's time and the Government does not opposed this award. *See Defs.' Resp.* at 18 n.2.

For lead counsel, Patti Goldman, Humane Society requests an hourly rate of $350, because of her "unique expertise in both trade and environmental law and litigation and the limited amount [sic] of qualified attorneys with this expertise." *Decl. of Patti Goldman* at ¶ 8. As Humane Society recognizes, a special factor refers to "attorneys 'qualified for the proceedings' in some specialized sense, rather than just in their general legal competence." *Underwood*, 487 U.S. at 572. The Supreme Court determined that this language "refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question . . . ." *Id*.

The court dealt with similar litigation and a comparable attorney skill level in *Earth Island Institute v. Christopher*, 20 CIT 1221, 942 F. Supp. 597 (1996). The court reaffirmed the proposition that the rates of an attorney in a specialized field should be calculated in accordance with the market rates of the relevant community. *See id.* at 1239, 942 F. Supp. at 612. In 1996, the court

calculated the award to lead counsel at a rate of $280 per hour for his work on *Earth Island*. *See id.*

at 1239-40, 942 F. Supp. at 612-13 n.32. The court in *Earth Island* considered the declarations of

other attorneys specializing in the same field as lead counsel's to determine the reasonable market rate

for someone with his experience and skill level. *See id.*

Patti Goldman has provided the court with a long list of her experience and credentials. *See*

*Decl. of Patti Goldman* at ¶¶ 11-16. Another attorney specializing in environmental and trade

litigation also provided the court with a declaration attesting to the legal expertise of Patti Goldman, and

to the prevailing market rate of her legal services at $350 per hour. *See Decl. of Joshua R. Floum*.

He stated:

> [s]ince so few attorneys have practices in this area of law, there is no well-developed market
> rate for the particularized field of trade and environmental litigation. However, my current rate
> is $350 per hour. . . . I am a 1983 law school graduate, as is Ms. Goldman. She would
> command a market rate of well over $350.

*Id.* at ¶ 8. As in *Earth Island*, the court has no basis to find otherwise. Accordingly, Patti Goldman

will be compensated for her time at a rate of $350 per hour.

## C. Proper Rate of Compensation for Interns

The Supreme Court in *Missouri v. Jenkins*, 491 U.S. 274 , 287 (1989) "reject[ed] the

argument that compensation for paralegals at rates above 'cost' would yield a 'windfall' for the

prevailing attorney." The court in *Earth Island*, 20 CIT at 1244-45, 942 F. Supp. at 615, determined

that in accordance with the Supreme Court's stated views, the appropriate compensation for

paralegals, law clerks, and summer associates should be determined by the marketplace. Therefore, if

the court determines that $75 per hour is a reasonable rate in accordance with the marketplace, $75

per hour should be awarded.  In *Earth Island*, the court agreed with the declaration of another

attorney that the requested rates were reasonable.  *See id.* at 1244, 942 F. Supp. at 615.  In this case,

there is no declaration except that of Humane Society's own attorney.  Yet, the Government does not

dispute the stated amount is the market rate, it only disputes that the market rate should be awarded.

The Government correctly points out that in the past the court has stated that "'the appropriate means

of compensation for law clerk and paralegal time is to treat this class of personnel as an expense

covering study and analysis.'" *Bonanza Trucking Corp. v. United States*, 11 CIT 436, 445, 664 F.

Supp. 1453, 1460 (1987) (quoting *Ashton v. Pierce*, 580 F. Supp. 440, 433 (D.D.C. 1984) (internal

quotation marks omitted)).  As stated in *Earth Island*, however, this is no longer the prevailing view of

the court.

As the cases cited by the Government no longer reflect the opinion of the court, market rates

shall determine the per hour rate of legal interns.  Patti Goldman has sworn that $75 per hour is the

market rate and the Government makes no assertions to the contrary; therefore, Humane Society

should be compensated at this rate.

**D.  Amount of Fees to be Awarded**

Humane Society seeks a fee award of $59,715.83, although it does not show all the

calculations used to arrive at this amount.[1]  The Government opposes this proposed amount on several

grounds.  *See Defs.' Resp.* at 11-23. After considering the Government's proposed reductions, the

---

[1] Using the numbers provided by Humane Society, the court arrived at $59,775.39; this number is reflected in the calculations.

court arrives at a fee award of $42,367.79.[2]

First, the court reduced the figure by compensating Humane Society for one third of the hours representing matters spent only partially on its successful claim and partially on its two unsuccessful claims, rather than the one half which Humane Society requests. Secondly, the court deducted the hours spent preparing Humane Society's unsuccessful appeal. The court also deducted the hours Patti Goldman spent reading the decision and writing a memo to the client concerning the decision. Finally, the court reduced the rate of compensation of Patti Goldman for time spent on the fee award application to the rate of compensation of a non-specialized attorney, $139 per hour.

The court awards fees and expenses to Humane Society in the amount of $42,367.79. The Government was not substantially justified in refusing to identify Italy as a country that it had reason to believe was large scale driftnet fishing. Humane Society was forced to spend a large amount of money pursuing this lawsuit to compel the Government to take steps to enforce important environmental litigation. Environmental litigation is often costly and the EAJA is designed to encourage parties to bring meritorious lawsuits which would normally be difficult to finance. Humane Society should be compensated in an amount which will encourage it to bring valid claims in the future when the Government's position is not justified. Awarding $42,367.79 reduces the original amount requested by Humane Society to compensate it only for its prevailing claims, and gives the parties the proper incentives in future litigation.

---

[2] This amount includes compensation for expenses in the amount of $1,644.51.

### III. CONCLUSION

For the foregoing reasons, the court finds that the Government's position on count three in

*Humane III* was not substantially justified within the meaning of the EAJA.  Therefore, the court grants

Humane Society's application for attorneys' fees and other expenses in the amount of $42,367.79 and

orders reimbursement from defendants in that amount.

SO ORDERED.


Dated:_____                                    _____
        New York, NY                                                   Judith M. Barzilay
                                                                       Judge