Slip Op. 04-118

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: GREGORY W. CARMAN

|  |  |  |
|---|---|---|
| FORMER EMPLOYEES OF TYCO ELECTRONICS, FIBER OPTICS DIVISION, | : : : : | |
| Plaintiffs, | : : : | |
| v. | : : | Court No. 02-00152 |
| UNITED STATES DEPARTMENT OF LABOR, | : : : | |
| Defendant. | : : : : | |

[Plaintiffs' Application for Fees and Other Expenses Pursuant to the Equal Access to Justice Act is granted with certain adjustments.]

*Williams Mullen, P.C.*, (*Jimmie V. Reyna*, *Francisco J. Orellana*) Washington, D.C. for Plaintiffs.

*Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, *Jeanne E. Davidson*, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, *Stephen Carl Tosini*, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, *Jayant Reddy*, Office of the Solicitor, United States Department of Labor, of Counsel, for Defendant.

Dated: September 16, 2004

## OPINION

This matter comes before the Court on Plaintiffs', Former Employees of Tyco Electronics, Fiber Optics Division, Glen Rock, Pennsylvania, ("Former Employees"), application for attorneys fees and other expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (2000). The EAJA states that "[e]xcept as otherwise specifically provided by statute, a

court shall award to a prevailing party other than the United States fees and other expenses . . . , incurred by that party in any civil action . . . brought by or against the United States . . . , unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Former Employees' application is made in connection with this Court's final decision in *Former Employees of Tyco Elecs. v. United States*, No. 02-00152, 2004 Ct. Int'l Trade LEXIS 33 (Ct. Int'l Trade April 14, 2004) ("*Tyco III*"), which sustained the United States Department of Labor's certification of Plaintiffs as eligible to apply for North American Free Trade Agreement-Transitional Adjustment Assistance ("NAFTA-TAA"). Because the Court finds that Labor's position during this litigation was not substantially justified, Plaintiffs' application for fees and expenses under the EAJA is granted with certain modifications discussed below.

## BACKGROUND

Although the detailed background facts and procedural history of this action have been articulated by the Court in its earlier opinions, *see Tyco III*, 2004 Ct. Int'l Trade LEXIS 33, at *2-*7; *Former Employees of Tyco Elecs. v. United States Dep't of Labor*, 264 F. Supp. 2d 1322, 1323-26 (Ct. Int'l Trade 2003) ("*Tyco II*") (denying Plaintiffs' second motion for judgment on the agency record and remanding the case to Defendant); *Former Employees of Tyco Elecs. v. United States Dep't of Labor*, 259 F. Supp. 2d 1246, 1248 (Ct. Int'l Trade 2003) ("*Tyco I*") (granting Defendant's second motion to file remand results of out time, denying Plaintiffs' motion for certification, and granting Plaintiff's request for fees pursuant to USCIT R.16(f)), it is necessary for the Court to review the development of this action again so that it may determine whether or not the Government's position was substantially justified under the EAJA. *See*

*Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States*, 837 F.2d 465, 467

(Fed. Cir. 1988) ("Substantial justification is to be decided case-by-case on the basis of the

record. . . and is reached by examination of the government's position and conduct through the

EAJA 'prism.'" (internal quotation marks and citations omitted)).

## A.  Plaintiffs' Petition for NAFTA-TAA Benefits.

In July 2001, Former Employees sought certification for NAFTA-TAA benefits pursuant

to 19 U.S.C. § 2331[1], based on their belief that their job loss was a result of an increase in

---

[1] Section 2331(a)(1) provides:

A group of workers . . . shall be certified as eligible to apply for adjustment assistance
under this subchapter . . . if [Labor] determines that a significant number or proportion
of the workers in such workers' firm or an appropriate subdivision of the firm have
become totally or partially separated, or are threatened to become totally or partially
separated, and either–
(A) that–
   (i) the sales or production, or both, of such firm or subdivision have decreased
   absolutely,
   (ii) imports from Mexico or Canada of articles like or directly competitive with
   articles produced by such firm or subdivision have increased, and
   (iii) the increase in imports under clause (ii) contributed importantly to such
   workers' separation or threat of separation and to the decline in the sales or
   production of such firm or subdivision; or

(B) that there has been a shift in production by such workers' firm or subdivision to
Mexico or Canada of articles like or directly competitive with articles which are
produced by the firm or subdivision.

19 U.S.C. § 2331(a)(1) (2000).

The Court notes that Congress repealed 19 U.S.C. § 2331, on August 6, 2002, folding the
NAFTA-TAA program into a new trade adjustment assistance scheme under the newly-revised
version of the Trade Act of 1974 renamed the Trade Act of 2002. *See* Pub. L. No. 107-210, §
123(a), 116 Stat. 933, 944 (2002).  However, Plaintiffs' petition antecedes the November 4,
2002, effective date of the revised statute; thus, they cannot benefit from the terms of the revised
statute. *See id.* at § 151, 116 Stat. 953-54.

imports from Mexico and a result of a shift in production of fiber optic components to Mexico. Pub. Admin. R. at 2, 53. The Pennsylvania Department of Labor and Industry initiated a preliminary investigation and denied the Former Employees' petition based on insufficient import information regarding like products and Tyco Electronics' initial survey response. Conf. Admin. R. at 12-14.

**B. Administrative Proceedings at the Department of Labor.**

**1. Labor's Initial Investigation.**

Labor initiated an investigation of the Former Employee's NAFTA-TAA certification eligibility petition in September 2001. *Investigations Regarding Certifications of Eligibility to Apply for NAFTA Transitional Adjustment Assistance*, 66 Fed. Reg. 48,708 (Sept. 21, 2001). Labor's initial investigation consisted of one form letter requesting information about Former Employees' job separation from company officials at Tyco Electronics. Conf. Admin. R. at 33-34. Labor denied the Former Employees' NAFTA-TAA petition on the grounds that imports from Mexico did not contribute importantly to the Former Employees' separation and there was no shift in production to Mexico. *Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance*, 66 Fed. Reg. 53,250, 53,252 (Oct. 19, 2001). Based on Tyco Electronics' response to the form letter, Labor determined that the predominant cause of Former Employees' job separation was a shift in production to an affiliated Tyco Electronics facility in Harrisburg, Pennsylvania. Pub. Admin. R. at 19.

**2. Former Employees' Motion for Administrative Reconsideration.**

Former Employees filed a motion for administrative reconsideration of Labor's negative

NAFTA-TAA determination, asserting again that their job separation was caused by a shift in production to Mexcio. *Id.* at 54. Based upon additional information provided during a conference call with Tyco Electronics company officials, Labor denied Former Employees' request for administrative reconsideration. *Tyco Elecs. Fiber Optics Div., Glen Rock, Pa.; Notice of Negative Determination Regarding Application for Reconsideration*, 67 Fed. Reg. 5,299 (Feb. 5, 2002). Labor stated that only "a negligible portion of the plant production was shifted to Mexico during the relevant period." Pub. Admin. R. at 69.

## C. Litigation Before This Court.

Appearing *pro se*, Former Employees filed a complaint in this Court challenging Labor's negative determination. Pls.' Compl. at 1 (Jan. 30, 2002). Plaintiffs' counsel was appointed by the Court to represent the Former Employees *pro bono*. *Former Employees of Tyco Elecs. v. United States*, No. 02-00152 (Ct. Int'l Trade April 16, 2002) (order granting Plaintiffs' motion to proceed *in forma pauperis*).

### 1. The First Voluntary Remand.

Immediately after the Former Employees filed their first Rule 56.1 Motion for Judgment on the Agency Record, Defendants sought Plaintiffs' consent to a voluntary remand. *See* Def.'s Mot. for Voluntary Remand at 2. In seeking a voluntary remand, Defendant stated that "[a]fter review of the administrative record in light of the arguments [Plaintiffs] made in their Rule 56.1 motion, defendant seeks a remand to Labor to conduct a further investigation and make a redetermination." *Id.*

This Court granted Defendant's request for a voluntary remand and ordered that Defendant conduct a remand investigation and submit remand results by October 7, 2002.

*Former Employees of Tyco Elecs. v. United States*, No. 02-00152 (Ct. Int'l Trade Aug. 6, 2002) (order granting voluntary remand) ("Voluntary Remand Order"). The Voluntary Remand Order, which was drafted and submitted by Defendant with its motion, mandated that Labor "conduct further investigation, [and] collect further evidence, including evidence from the plaintiffs." *Id.* at 1. Labor failed to timely comply with the Voluntary Remand Order and did not submit a remand determination to this Court on or before October 7, 2002.

On October 17, 2002, Plaintiffs submitted certain information to Defendant's counsel for use in the remand determination. *Tyco I*, 259 F. Supp. 2d at 1248 (citing the parties' *Timeline Stipulation*, Jan. 29, 2003). On November 12, 2002, Plaintiffs contacted Defendant to inquire about the status of the remand investigation. *Id.* At that time, Defendant's counsel informed Plaintiffs' counsel that the remand investigation had not started. *Id.*

**2. Labor's First Remand Determination Filed Out of Time.**

After Plaintiffs' counsel contacted Defendant, Defendant filed a motion for leave to file the remand results out of time. *Id.* In January 2003, Defendant filed a second motion for leave to file the remand results out of time. *Id.* Labor's remand determination was filed with the Court on January 17, 2003, more than five months after the matter had been remanded to Labor. *See Tyco Elecs., Fiber Optics Div.; Glen Rock, PA; Notice of Negative Determination on Reconsideration on Remand*, 68 Fed. Reg. 5,655 (February 4, 2003) ("*First Remand Results*"). This Court accepted the *First Remand Results* out of time and awarded Plaintiffs' attorney's fees for expenses incurred as a result of Defendant's delay under USCIT Rule 16(f). *Tyco I*, 259 F. Supp. 2d at 1250-53.

### 3.  Labor's First Remand Investigation and Determination.

In the conducting the first remand investigation, Labor contacted Tyco Electronics officials and asked for sales figures for the relevant time period.  Pub. Supplemental Admin. R. at 2.  Tyco Electronics reported declining sales in the latter part of the relevant time period.  Conf. Supplemental Admin. R. at 5.  Based on the reported declining sales, Labor surveyed two major Tyco Electronics customers regarding their imports of like products during the relevant time period.  Pub. Supplemental Admin. R. at 17.  According to Labor, the surveys revealed that one customer did not increase its imports of like products or products competitive with the items produced at the Glen Rock plant.  *Id.* at 18.  The other customer reported no direct import purchases during the relevant period and a "relatively low" amount of indirect imports during the latter part of the relevant period.  *Id.*  Based on these findings, Labor "affirm[ed] the original notice of negative determination of eligibility."  *Id.*

### 4.  The Court Ordered Second Remand.

Plaintiffs filed a second 56.1 Motion challenging Labor's determination in the *First Remand Results*.  In May 2003, this Court ordered a second remand, finding that the customer surveys that Labor relied upon were incomplete and "insufficient to support Labor's conclusion." *Tyco II*, 264 F. Supp. 2d at 1331.  The Court also found that Labor failed to conduct any further investigation or analysis to support its conclusion that a shift in production to Mexico did not occur.  *Id.* at 1331-32.  In fact, Defendant conceded that a second remand was necessary because the *First Remand Results* "[were] deficient in so far as they did not address information obtained from the Plaintiffs" as directed in this Court's order granting Defendant's request for voluntary remand. (Def.'s Mem. in Partial Opp'n to Pls.' Cmts. on Def.'s Negative Determination on

Remand at 8.

This Court remanded the case to Labor "for further consideration and investigation of 1) the [] information submitted by Plaintiffs; 2) the propriety of conducting an import analysis to support the information contained in the customer surveys, 3) the seemingly contradictory information provided by Tyco Electronics regarding sales; and 4) the arguments made in Plaintiffs' [second] 56.1 Motion regarding a shift in production in light of the data contained in the [] information [submitted by Plaintiffs]." *Tyco II*, 264 F. Supp. 2d at 1333.

### 5. Labor's Second Remand Investigation and Determination.

After the second remand, Labor certified Plaintiffs as eligible to receive NAFTA-TAA benefits. *Tyco Elecs., Fiber Optics Div., Glen Rock, PA; Notice of Revised Determination on Remand*, 68 Fed. Reg. 41,185 (July 10, 2003) ("*Second Remand Results*"). Labor stated that it had "requested and obtained new and additional information and clarification from the company regarding plant production shifts to Mexico." *Id*. After reviewing this information, Labor "conclud[ed] that there was a shift of production to Mexico that contributed importantly to the worker separations and sales or production declines at the subject facility." *Id.*

### 6. The Court's Final Judgment.

After the *Second Remand Results* were filed with the Court, Plaintiffs informed the Court that the Former Employees had been told that they would be unable to receive certain TAA benefits because the statutory 104-week eligibility period for those allowances had expired during the pendency of this litigation. *See* Letter from Lenita Jacobs-Simmons, Reg'l Adm'r for the U.S. Dep't of Labor, to the Hon. Stephen Schmerin, Sec'y of Labor and Indus. for the State of Pa., of 02/27/04, at 1-2 ("Jacobs-Simmons Letter"); *see also* 19 U.S.C. § 2293(a)(2) ("[T]rade

readjustment allowance shall not be paid for any week after the close of the 104-week period . . . that begins with the first week following the week in which the adversely affected worker was most recently totally separated"). Plaintiffs were informed that "[s]ince [Plaintiffs'] certification was issued after the expiration of the 104-week eligibility period for basic TRA for most covered Tyco workers[,] . . . it was not possible for most of the workers to qualify for any basic TRA." Jacobs-Simmons Letter at 1-2. At Plaintiffs' request, the Court held a telephone conference with the parties at which time Defendant's counsel and Plaintiffs' counsel informed the Court that they would "work together to resolve this issue." Letter from Def.'s Counsel to the Court of 09/03/03, at 1. During the next several months, the parties worked together to solve this problem and kept the Court apprised of the situation through weekly status reports. The issue was resolved in March 2004. *See* Jacobs-Simmons Letter at 2 ("Where there has been undue and extreme delay in issuing a certification due to circumstances of litigation, <u>and plaintiffs' actions did not substantially contribute to the delay</u>, the 104-week basic TRA eligibility period shall not begin until the certification is issued. . . . Equity and good conscience dictate that the Tyco workers be 'made whole' by being restored to the position they would have occupied had there been no delay in issuing the certification." (emphasis added).)

After this issue had been resolved, the parties submitted proposed judgment orders. On April 14, 2004, the Court issued its final judgment affirming Labor's certification of Plaintiffs eligibility to receive NAFTA-TAA benefits. *Tyco III*, 2004 Ct. Int'l Trade LEXIS 33, at \*12-\*13. The Court noted that Labor failed to follow this Court's specific instructions on remand. *Id.* (comparing *Tyco II*, 264 F. Supp. 2d at 1333 (ordering Defendant to (1) consider specific information obtained from Plaintiffs; (2) consider conducting an import analysis to support the

customer survey responses; (3) resolve the seemingly contradictory information provided by Tyco Electronics regarding sales, and (4) discuss the specific arguments raised by Plaintiffs in their 56.1 Motion), with *Second Remand Results*, 68 Fed. Reg. 41,185 (failing to mention any information obtained from Plaintiffs and granting certification based on "new and additional information and clarification from the company")).  The Court affirmed Labor's determination as implemented by the Jacob-Simmons Letter.  *Id.* at *13.

## DISCUSSION

Under the EAJA, fees and expenses must be awarded if (1) the claimant is a prevailing party; (2) the government's position during the administrative process or during litigation was not substantially justified; (3) no special circumstances make an award unjust; and (4) the fee application is timely and supported by an itemized fee statement.  28 U.S.C. § 2412(d)(1)(A)-(B); *see also Libas, Ltd. v. United States*, 314 F.3d 1362, 1365 (Fed. Cir. 2003) (citing *INS v. Jean*, 496 U.S. 154, 158 (1990)).  "The EAJA is a waiver of sovereign immunity that must be strictly construed." *Am. Bayridge Corp. v. United States*, 86 F. Supp. 2d 1284, 1285 (2000).

Here, Plaintiffs submitted an application for fees and expenses totaling $119,993.70. Pls.' Mem. in Support of Pls.' Application for Fees and Other Expenses Pursuant to the Equal Access to Justice Act ("Pls.' Br.") at Attach. F.  Plaintiffs attached two itemized statements, entitled "Proforma 1" and "Proforma 2", to their application accounting for 707.8 hours of work performed. *See* Pls.' Attach. A.  The Government contends that the Plaintiffs' application for fees and expenses should be denied for two reasons: (1) Plaintiffs have failed to establish that they meet the requirements for an eligible party under the EAJA; (2) the Government's position in this matter was substantially justified.  Def.'s Resp. to Pls.' Application for Att'ys Fees and

Expenses ("Def.'s Resp.") at 11-18. Alternatively, the Government contends that if the Court finds that Plaintiffs' application should be granted, Plaintiffs' application does not support an award for the full amount of attorney fees requested and should be reduced because it is unreasonable and excessive. *Id.* at 19-28.

As discussed below, this Court finds that Plaintiffs' application is sufficient to meet the requirements under the EAJA and the Government's position during this litigation was not substantially justified; thus, Plaintiffs' application for fees and expenses is granted with certain modifications.

PARTIES' CONTENTIONS

I. *Plaintiffs' Contentions.*

**A. The Former Employees are Eligible Parties.**

As evidence of Plaintiffs' fulfillment of the EAJA's "party" eligibility requirements, Plaintiffs submitted the Motion for Leave to Proceed In Forma Pauperis of Ms. Karen Hawks, the lead plaintiff, her supporting affidavit, and the Court's order granting the motion. Pls.' Attach. F. Ex. B. Ms. Hawks' affidavit states that her individual net worth is below the two million limit set by the EAJA. *Id.*

**B. Labor's Position was Not Substantially Justified.**

Plaintiffs contend that throughout the administrative process and this litigation, the Government's position has been to deny Plaintiffs' certification because there was no increase in imports and no shift in production to Mexico. Pls.' Br. at 15. Plaintiffs contend that this position was not substantially justified for many reasons. *Id.* at 15-16. First, as argued in their first 56.1 Motion, Plaintiffs claim that Labor's initial investigation "was incomplete, scant, inept and not

supported by substantial evidence." *Id.* at 16. Plaintiffs contend that even after the Government requested the first remand "in light of the arguments [plaintiffs] made in their Rule 56.1 [brief]," Labor failed, in the *First Remand Results*, to consider the information provided by Plaintiffs in accordance with the Voluntary Remand Order. *Id.* (citing *Tyco II*, 264 F. Supp. 2d at 1330; Def.'s Mot. for Voluntary Remand at 2.) Plaintiffs contend that in the *First Remand Results*, "the Government reinstated the position it had articulated in the underlying investigation in the [*First Remand Results*] although it had already conceded that the underlying investigation was inadequate." *Id.*

Plaintiffs argue that by ordering a second remand in *Tyco II*, this Court recognized that the Government's position in the *First Remand Results* was without a basis in law or fact. *Id.* at 17. Plaintiffs contend that even "the Government conceded that the underlying investigation was inadequate" because the Government indicated that an additional remand was necessary. *Id.*

Plaintiffs assert that after two and a half years of litigation, Labor abandoned its earlier position and certified Plaintiffs in the *Second Remand Results*. *Id.* However, Plaintiffs note that Labor "failed to include findings of fact and conclusions of law in its [*Second Remand Results*]." *Id.* Plaintiffs contend that it cannot be determined from the *Second Remand Results* "why the Government abandoned its position." *Id.* Plaintiffs contend that the Government's "abrupt reversal" in position is a "concession that its position had been . . . without a basis in law and fact." *Id.*

Plaintiffs contend that the Government's position during this litigation even fails the "substantial evidence" standard, which is more lenient than the substantially justified standard applicable for EAJA determinations. *Id.* at 18. Plaintiffs contend that "[g]iven that the substantial

evidence standard is more lenient than the substantially justified standard, this court should determine that the government's position was not substantially justified." *Id.* at 18-19.

Additionally, Plaintiffs assert that there are no special circumstances in this case that would make an award of fees unjust. *Id.* at 19 (citing 28 U.S.C. § 2412(d)(1)(A)). Plaintiffs claim that other considerations warrant the award of attorney fees in this case, including the remedial nature of the trade adjustment assistance statute, Defendant's dilatory tactics during litigation, and Defendant's disregard for the Court's orders and rules. *Id.* at 24-26.

## C. The Court Should Award Specialized Attorney Fees.

Plaintiffs acknowledge that the EAJA specifically provides that "fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." *Id.* at 20 (quoting 28 U.S.C. § 2412(d)(2)(A)(ii)). However, Plaintiffs ask this Court to award a higher fee because it is justified under the "special factor" standard of the EAJA as articulated by the Supreme Court in *Pierce v. Underwood*, 487 U.S. 552, 572 (1988). Plaintiffs assert that *Pierce v. Underwood* established that "special factor refers to attorneys having some distinctive knowledge or specialized skill needed for the litigation in question." *Id.* at 20 (quoting *Pierce*, 487 U.S. at 572). Plaintiffs contend that lead counsel, Mr. Jimmie Reyna, has specialized skills in the field of international trade law which "have been essential in securing trade adjustment assistance" for Plaintiffs. *Id.* at 21. Plaintiffs contend that because of Mr. Reyna's specialized skills, they are entitled to attorney fees based on hourly rates of $310 to $365 per hour for lead counsel and $140 to $195 per hour for associate counsel, which are the prevailing market rates in the relevant community. *Id.* at 20-21 (citing Human Soc'y of the

United States v. Bush, 159 F. Supp. 2d 707, 712 (Ct. Int'l Trade 2001); Earth Island Inst. v.

Christopher, 942 F. Supp. 597, 612 (Ct. Int'l Trade 1996)).

**D.  The Court Should Award Fees that Reflect a Cost of Living Adjustment.**

Alternatively, if the Court finds that special factors are not present in this case, Plaintiffs

ask the Court to award fees at the $125 per hour rate approved under the EAJA with a cost of

living adjustment ("COLA").  *Id.* at 22 (citing Levernier Const., Inc. v. United States, 947 F.2d

497, 503 (Fed. Cir. 1991); Oliveira v. United States, 827 F.2d 735, 742 (Fed. Cir. 1987)).

Plaintiffs assert that the COLA is calculated using the Consumer Price Index for all Urban

Consumers ("CPI-U"), which is compiled by the United States Department of Labor, Bureau of

Labor Statistics.  *Id.* at 23.  Plaintiffs contend that any increase is determined from the baseline

CPI-U as of March 1996, the date on which the $125 hourly rate cap became effective.  *Id.* at 23

(citing Gonzalez v. United States, 44 Fed. Cl. 764, 770-71 (1999)).  Plaintiffs contend that the

CPI-U for March 1996 was 155.7.  *Id.* at 23 (citing Cal. Marine Cleaning, Inc. v. United States, 43

Fed. Cl. 724, 734 (1999)).  Based on the CPI-U for 2002 (188.2), 2003 (193.5), and 2004

(197.68), Plaintiffs contend that the fees with the COLA are $151.25, $156.25, $158.75 per hour

for 2002, 2003, and 2004 respectively.  *Id.* at 23 (citing Pls.' Attachs. E, F).

**E.  The Court Should Award Fees for Paralegals and Summer Associates Based on the Prevailing Market Rates.**

Plaintiffs contend that the hourly rates for paralegal and summer associates should be

based on the prevailing market rates of $95, $100, and $115 per hour.  *Id.* at 23.  Plaintiffs

contend that, in *Earth Island Inst.*, 942 F. Supp. at 615, the court determined that the appropriate

compensation for paralegals and summer associates should be determined by the marketplace.  *Id.*

Plaintiffs contend that the Court, in *Tyco I*, accepted the $95 per hour rate for paralegals, and that Mr. Jimmie Renya attests that $115 per hour is consistent with the prevailing market rate for summer associates. *Id.* at 24 (citing Tyco I, 259 F. Supp. 2d at 1253).

II. *Defendant's Contentions*.

**A. Labor's Position was Substantially Justified Throughout the Administrative Proceedings and this Litigation.**

Defendant contends that Labor's position was substantially justified. Def.'s Resp. at 12. Defendant stresses that "[t]he mere fact that the Government loses a case does not establish that its defense was not substantially justified." *Id.* (citing Luciano Pisoni, 837 F.2d at 467). Further, Defendant argues that "the fact that, upon the merits, the Court determined that Labor failed to examine plaintiffs' relevant submissions and offer satisfactory explanation for its action does not establish that the Government's position was not substantially justified." *Id.* (citing F.J. Vollmer Co. v. Magaw, 102 F.3d 591, 595 (D.C. Cir. 1996)).

First, Defendant asserts that Labor's position at the administrative level was substantially justified. *Id.* at 13. Defendant claims that Labor "requested information concerning the production of like or directly competitive products from Tyco [Electronics] during the original investigation." *Id.* Defendant notes that during the administrative investigation, Tyco Electronics officials responded that the layoffs at the Glen Rock facility were due to the transfer of work to another Tyco Electronics facility in Pennsylvania, not due to a shift in production to Mexico. *Id.* at 14 (citing Pub. Admin. R. at 15-16). Defendant contends that the follow-up questioning of a company official did not reveal any information that contradicted Tyco Electronics' claim that production did not shift to Mexico. *Id.* (citing Pub. Admin. R. at 66-67 ). Defendant contends

that "Labor's position [at the administrative level] . . . also had a rational basis in law and fact despite its failure to obtain further, more detailed information from Tyco [Electronics] that, on court-ordered remand much later in litigation, ultimately resulted in certification." *Id*.

Second, Defendant contends that Labor's position during litigation was also substantially justified. *Id.* at 15. Regarding the *First Remand Results*, Defendant contends that "Labor's conclusions . . . had a rational basis in law and fact based upon the statements of company employees." *Id.* Defendant notes that Labor's voluntary remand investigation sought "company-wide sales information . . . in addition to customer survey responses." *Id.* Defendant argues that Labor reasonably relied on this information in the *First Remand Results* to determine that there was no shift in production to Mexico "despite the Court's subsequent finding that the customer survey data was incomplete." *Id.* Defendant asserts that Labor's position was rational based on the combination of "complementary" information obtained during Labor's administrative investigation and on voluntary remand. *Id.* at 15-16.

Defendant argues that the fact that Labor did not provide any analysis of any information submitted by or obtained from Plaintiffs in the *Second Remand Results* "should have no bearing upon a substantial justification finding . . . because Labor certified [Former Employees] as eligible to receive TAA benefits and, thus, further factual analysis was rendered unnecessary." *Id.* at 16.

**B. Plaintiffs' Application Fails to Establish that Plaintiffs' are Eligible Parties.**

Defendant contends that Plaintiffs' EAJA application fails to establish that Plaintiffs are eligible parties because Plaintiffs' application does not provide evidence of all the Plaintiffs' net worth and does not establish that the fees requested were actually incurred by Plaintiffs. *Id*. at 16, 19-20. First, Defendant asserts that Plaintiffs do not meet the net worth requirement. *Id.* at 16.

Defendant quotes the definition of "party" set forth in the EAJA: a "'party' means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." *Id.* at 17 (quoting 28 U.S.C. § 2412(d)(2)(B)). In this case, Defendant asserts that the application "for all 88 plaintiffs includes only an affidavit of one plaintiff concerning her individual assets." *Id.* Defendant urges this Court to require Plaintiffs to "'set forth a more explicit statement about [each plaintiff's] net worth' . . . or reduce any award of attorney fees to only allow recovery of fees based on the proportion of [Plaintiffs] who establish eligibility." *Id.* at 19 (quoting Bazlo v. West, 150 F.3d 1380, 1383-84 (Fed. Cir. 1998) and citing Sierra Club v. United States Army Corps of Eng'rs, 776 F.2d 383, 393-94 (2d Cir. 1985)).

Additionally, Defendant contends that Plaintiffs' application should be denied because Plaintiffs failed to provide any evidence that fees for the work listed in the Proforma 1 and Proforma 2 statements were "incurred" by Plaintiffs. *Id.* Defendant notes that "Plaintiffs' application contains no contemporaneous invoices, receipts, cancelled checks, or agreement with counsel that would be probative on the issue of incurrence." *Id.* at 19-20. Although Defendant acknowledges that Plaintiffs' counsel was appointed by this Court to represent Plaintiffs *pro bono*, Defendant contends that Plaintiffs must submit proof of billing or an agreement to satisfy the "incurred" requirement under the EAJA. *Id.* at 21.

## C. Plaintiffs' Application Does Not Support an Award for the Full Amount of Fees and Expenses Requested.

Defendant contends that, if this Court finds that fees are appropriate in this case, the Court should decrease the amount of attorney fees awarded because (1) the Proforma statements submitted in support of Plaintiffs' application are deficient and contain inaccuracies; (2) the

amount requested is excessive; (3) Plaintiffs should not be allowed to double-recover fees already awarded by the Court in *Tyco I*; (4) certain post-judgment activities are not compensable under the EAJA. *Id.* at 19.

First, Defendant asserts that Proforma 1 and Proforma 2, attached in support of Plaintiffs' application for fees, are inadequate. *Id.* at 20 (referencing Pls.' Attach. A). Defendant contends that Proforma 1 and Proforma 2 contain the following inconsistencies and deficiencies: the client name listed is different on each; the two case designations used are overly-broad and generic; and there is no evidence that Plaintiffs' attorneys would have actually billed Plaintiffs at the rates listed. *Id.* at 20-21.

Second, Defendant contends that Plaintiffs' requested fees are excessive for several reasons. *Id.* at 21-25. Defendant asserts that Plaintiffs' requested hourly rates far exceed the EAJA statutorily allowed rates and should be reduced accordingly. *Id.* at 21 (citing 28 U.S.C. 2412(d)(2)(A)). Defendant asserts that Plaintiffs seek fees ranging from $135 to $365 per hour. *Id.* (citing Pls.' Attach. A). Contrary to Plaintiffs' claim, Defendant asserts that no special factors exist for awarding fees in excess of the $125 statutorily-allowed hourly rate. *Id.* at 22 (citing Pls.' Br. at 21; Pls.' Attachs. C, D). Specifically, Defendant contends that trade adjustment assistance cases "do not require any specialized skills or knowledge." *Id.* at 23. Defendant notes that this Court asks "<u>any</u> attorney admitted to practice before the court" to volunteer to represent TAA plaintiffs. *Id.* (citing Court's announcement seeking attorneys to accept TAA cases, *available at* http://www.cit.uscourts.gov/infomational/cac.htm (last visited June 7, 2004)). Defendant contends that Plaintiffs' application "is replete with evidence that plaintiffs' attorneys were learning about [TAA] law as this litigation unfolded," which undermines Plaintiffs' claim of

specialized skill in this area of the law. *Id.* at 23-24 (citing F.J. Vollmer, 102 F.3d at 598). Defendant also argues that Plaintiffs' request for a cost of living adjustment should be rejected because "the statute does not 'absolutely require' it." *Id.* at 23 (quoting Baker v. Bowen, 839 F.2d 1075, 1084 (5th Cir. 1988)).

Additionally, Defendant contends that the fees requested are excessive because they contain summer associate hours which should not be compensable under the EAJA. *Id.* at 24. Defendant cites *Libas*, 283 F. Supp. 2d at 1333-34, wherein the court examined a request for such fees for summer associates and reduced the requested fees by two-thirds. *Id.* Defendant also asserts that the "hundreds of hours" that counsel devoted to Plaintiffs' first motion for judgment on the agency record is unreasonable. *Id.* at 24. Defendant contends that these fees include "teams of attorneys (and summer associates) working 14-16-hour days during the period preceding the filing of the brief." *Id.* at 24-25 (citing Proforma 1 at 5). Defendant notes that on the same day, one summer associates spent 11.4 hours on revising Plaintiffs' brief, while another summer associate worked 15.1 hours on a draft of the same brief. *Id.* at 25 (citing Proforma 1 at 5). Defendant also contends that the Court should not grant the fees requested that reflect "time spent conducting background research to familiarize the attorneys (and summer associates) with NAFTA-TAA issues, generally." *Id.* at 27. Defendant asserts that fees for background research are presumptively unreasonable. *Id.* (citing Case v. Unified Sch. Dist. No. 223, Johnson County Kan., 157 F.3d 1243, 1253 (10th Cir. 1998); Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). Defendant contends that these fees are excessive and should be reduced by the Court. *Id.*

Third, Defendant claims that Plaintiffs are seeking to "double-recover" the fees that this Court awarded to Plaintiffs as sanctions for Defendant's delay in filing the *Second Remand*

*Results*. *Id.* at 25, 28 (citing Tyco I, 259 F. Supp. 2d at 1253). Defendant contends that those fees were paid in accordance with this Court's order and should not be included in this award should the Court find that fees are appropriate under the EAJA. *Id.* at 28.

Finally, Defendant argues that Plaintiffs should not be allowed to recover the fees that were incurred after Plaintiffs were certified by the Department of Labor because those fees "do not reflect compensable post-judgment activity." *Id.* at 25 (citing Pennsylvania v. Del. Valley Citizens' Counsel for Clean Air, 478 U.S. 546, 558-59 (1986); Keith v. Volpe, 833 F.2d 850, 855 (9th Cir. 1987)). Defendant asserts that contrary to other cases in which fees for post-judgment activity have been allowed, "[t]his case does not involve a consent decree or similar judgment over which the Court may assert continuing jurisdiction." *Id.* Defendant claims that any problems with the administration of Plaintiffs' TAA benefits after certification by the Department of Labor should have been dealt with through state government channels. *Id.* at 26. Thus, Defendant argues, "any attorney fees connected to aiding these workers with their benefits is not part of this litigation and not properly before the Court." *Id.* at 26 (citing 28 U.S.C. § 2395(d) which grants this Court jurisdiction over challenges to a "final determination of the Secretary of Labor under [19 U.S.C. §] 2273").

### ANALYSIS

The Court holds that Plaintiffs' application for fees and expenses under the EAJA meets the necessary requirements and should be granted because Defendant's position in this litigation was not substantially justified and no other reasons make an award unjust. *See* 28 U.S.C. § 2412(d). Based upon Plaintiffs' application and Defendant's response, this Court awards attorney fees based upon the statutory cap of $125 per hour with a cost of living adjustment, and declines

to award any fees for certain unreasonable entries included in Proforma 1 and Proforma 2.

**A. The Former Employees are Eligible Parties under the EAJA.**

Although it is uncontested that Plaintiffs prevailed in this action under the EAJA, Defendant contends that Plaintiffs have failed to establish that they are eligible parties under the EAJA. Def.'s Resp. at 16-21.

First, Defendant contends that Plaintiffs have failed to establish that they meet the net worth requirements under the EAJA. *Id*. at 16-18. This Court has found that party eligibility for EAJA purposes is satisfied by a primary plaintiff's net worth not exceeding the two million dollars at commencement of the action. *See Former Employees of Oxford Automotive U.A.W. Local 2088 v. United States Dep't of Labor*, No. 04-52, slip op. at 1 n.2, 2004 WL 1146102, at *1 n.2 (Ct. of Int'l Trade May 18, 2004). This Court finds that Plaintiffs have provided sufficient evidence to prove that their individual net worth was less than two million dollars at the time this action was filed as required by § 2412(d)(2)(B) of the EAJA. In support of Plaintiffs' eligibility, Plaintiffs attached to their EAJA application the Motion to Proceed in Forma Pauperis of Ms. Karen Hawks as their lead plaintiff, which this Court treated as primary plaintiff. This Court granted Plaintiffs' Motion to Proceed in Forma Pauperis. Pls.' USCIT Form 15 at Ex. B (Pls.' Attach. F). Ms. Hawks' affidavit in support of her Motion to Proceed in Forma Pauperis states that her net worth is below the two million maximum set by the EAJA. *See id.*

Although there are eighty-eight people covered by Labor's certification for eligibility to receive NAFTA-TAA benefits as former employees of the Tyco Electronics, Glen Rock, Pennsylvania facility, it is clear from the complaint filed in this action, the Court's order granting Ms. Hawks' request to proceed *in forma pauperis*, which appointed *pro bono* counsel, Plaintiffs'

EAJA application, which list the applicant as "Former Employees of Tyco Electronics, Fiber

Optics Division, <u>Karen Hawks, Lead Plaintiff Worker</u>," and the statements attached to Plaintiffs'

application that the work performed by counsel was for Ms. Karen Hawks.  *See* Pls.' Compl. at 1

(with corresponding letter from Clerk's Office to Ms. Karen Hawks of 02/08/02); *Former*

*Employees of Tyco Elecs. v. United States*, No. 02-00152, (Ct. Int'l Trade Mar. 20, 2002) (order

granting motion to proceed *in forma pauperis*); Pls.' USCIT Form 15 at Ex. B (Pls.' Attach. F);

Proforma 1 at 1 ("MATTER NAME: Hawks, Karen . . . ADDRESS: Karen Hawks"; Proforma 2

at 1 ("CLIENT NAME: Hawks, Karen . . . ADDRESS: Karen Hawks"). Thus, the Court finds that

Ms. Hawks affidavit is sufficient to meet the EAJA's eligible party net worth requirements.

Second, Defendant contends that Plaintiffs' application is deficient because Plaintiffs

failed to provide any evidence that fees for the work listed in the Proforma 1 and Proforma 2

statements were "incurred" by Plaintiffs.  *See* Def.'s Resp. at 19-20.  This Court is not persuaded

by Defendant's arguments.  Under the EAJA, "a court shall award to a prevailing party . . . fees

and other expenses, in addition to any costs . . . <u>incurred</u> by that party." 28 U.S.C. §

2412(d)(1)(A).  "[C]ourts have awarded attorney fees under EAJA and similar fee-shifting statutes

requiring that fees be 'incurred' when the prevailing party is represented by a legal services

organization or counsel appearing *pro bono*." *Ed A. Wilson, Inc. v. Gen. Servs. Admin.*, 126 F.3d

1406, 1409 (Fed. Cir. 1997) (citing Watford v. Heckler, 765 F.2d 1562, 1567 n.6 (11th Cir. 1985)

("It is well-settled that, in light of the [EAJA's] legislative history and for reasons of public

policy, plaintiffs who are represented without charge are not generally precluded from an award of

attorneys' fees under the EAJA."); *Cornella v. Schweiker*, 728 F.2d 978 (8th Cir. 1984)).  Here, as

Defendant acknowledges, Plaintiffs' counsel was appointed by the Court to represent Plaintiffs

*pro bono*. *See* Def.'s Resp. at 21; *Former Employees of Tyco Elecs. v. United States*, No. 02-00152, (Ct. Int'l Trade Mar. 20, 2002) (order granting motion to proceed *in forma pauperis*). Contrary to Defendant's contentions, no proof of any billing or agreement is necessary to satisfy the "incurred" requirement under the EAJA because Plaintiffs' are represented on a pro bono basis.

**B. This Court Finds that the Government's Position in this Litigation was Not Substantially Justified.**

When evaluating the merits of the Government's litigating position, the court "must reexamine the legal and factual circumstances of the case from a different perspective than that used at any other stage of the proceeding." *Libas*, 314 F.3d at 1366 (quoting *United States v. Hallmark Constr.*, 200 F.3d 1076, 1079 (7th Cir. 2000); *see also* 28 U.S.C. § 2412(d)(1)(B) ("Whether or not the position of the United States was substantially justified shall be determined on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought."). An examination of the development of this case shows that the Government's position in this litigation was not substantially justified.

The fact that Former Employees prevailed in this litigation is not sufficient to show that the Government's position was not substantially justified. *See Luciano*, 837 F.2d at 467. The Federal Circuit explained that

> [t]he decision on an award of attorney fees is a judgment independent of the result on the merits, and is reached by examination of the government's position and conduct through the EAJA 'prism,' . . . not by redundantly applying whatever substantive rules governed the underlying case.

*Id.* (internal quotation marks and citations omitted). Substantial justification means "'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person.

That is no different from [a] 'reasonable basis both in law and fact.'" *Pierce*, 487 U.S. at 565 (citations omitted). It is the Government's burden to show that its position in litigation, as well as at the administrative level, "had a reasonable basis in both law and fact." *Chiu v. United States*, 948 F.2d 711, 714-15 (Fed. Cir. 1991). "[T]he imperative language of § 2412(d)(1)(A), 'a court shall award,' requires that the government bear[] the burden of proving its position was substantially justified." *Libas*, 314 F.3d at 1365 (citing *Neal & Co. v. United States*, 121 F.3d 683, 686 (Fed. Cir. 1997)); *Hallmark Constr.*, 200 F.3d at 1079 (noting that the EAJA does not create a presumption that a prevailing party will recover attorneys' fees and expenses, but that the government must prove that its position was substantially justified). Often, "the question [of whether the Government's position was substantially justified] will turn upon not merely what was the law, but what was the evidence regarding the facts." *Pierce*, 487 U.S. at 560 (emphasis added).

The Government's position in this litigation to deny Plaintiffs' eligibility for certification was based on information obtained from Labor's investigation during the administrative process and Labor's investigations and determinations on remand. This Court is not persuaded by the Government's argument that this information provided a reasonable basis for Labor to deny Plaintiffs' eligibility for certification during this litigation.[2] During this litigation, Labor repeatedly disregarded evidence of critical facts necessary to determine if Plaintiffs were eligible to receive TAA benefits. Specifically, Labor refused to accept information submitted by Plaintiffs, which allegedly contradicted statements made by Tyco Electronics officials.

---

[2] The Court need not address Labor's position at the administrative level because the Court finds that the Government's position during this litigation was not substantially justified.

Additionally, Labor failed to comply with the orders of this Court asking Labor to substantiate its determinations with additional legal and factual analysis on remand; and did not abide by its own assertions that it would gather information from Plaintiffs either in support of or in contradiction to their petition for certification. During this litigation, Labor continued to rely on incomplete and allegedly contradictory information to support its position. Finally, this Court finds that Labor failed to provide any analysis regarding the change in its position to certify Plaintiffs as eligible to receive benefits in the *Second Remand Results* that might have aided the Court in determining the reasonableness of its position during this litigation.

### 1. First Remand Results.

This Court finds that the Government's position in the *First Remand Results* to deny Plaintiffs' eligibility for certification was not substantially justified. First, Labor conceded that the *First Remand Results* were in direct violation of this Court's Voluntary Remand Order because they did not contain any information gathered or obtained from Plaintiffs. Def.'s Mem. in Partial Opp'n to Pls.' Cmts. on Def.'s Neg. Determination on Remand at 8. In ordering the first remand, this Court signed the draft order that was submitted with Defendant's motion, which stated that Labor would "conduct further investigation . . . [and] collect further evidence, including evidence from the plaintiffs." Voluntary Remand Order at 1. In *Tyco II*, this Court found that Labor's failure to gather <u>any</u> information from Plaintiffs, and Labor's rejection of the information voluntarily submitted by the Plaintiffs, was a result of Labor's arbitrary and capricious treatment of this remand investigation. *Tyco II*, 264 F. Supp. 2d at 1330.

As the Government acknowledged by conceding that an additional remand was necessary, Labor's denial of eligibility was not based upon an adequate examination of the available

evidence.  The Court remains unpersuaded by the Government's post hoc rationalizations that Labor considered the information that was submitted by Plaintiffs and merely failed to address such information in the *First Remand Results* because the information was <u>not</u> made a part of the administrative record and was not mentioned or referenced in Labor's determination.  The Court finds that Labor's position in the *First Remand Results* was not substantially justified because it failed to consider any information gathered from Plaintiffs contrary to Defendant's voluntary remand request and this Court's order.

Second, this Court finds that the Government's position in the *First Remand Results* was not substantially justified because it was based upon incomplete and allegedly contradictory information.  In the *First Remand Results*, Labor took the position that the Former Employees failed to qualify for NAFTA-TAA because "imports . . . did not contribute importantly to [the] workers' separations."  Pub. Supplemental Admin. R. at 16, 18.  Labor based its conclusion on two customer surveys conducted after Labor had requested company sales figures for the relevant time periods.  (*Id.* at 17-18.)  In *Tyco II*, this Court found that the customer surveys contained incomplete information.  *Tyco II*, 264 F. Supp. 2d at 1331.  The Court found that the incomplete surveys were insufficient to support Labor's determination on remand.  *Id*.  Defendant's contention that Labor's position after the voluntary remand had "a rational basis" despite the fact that the Court found that the customer surveys were incomplete because the information came from a "presumptively reliable source and was uncontradicted," Def.'s Resp. at 15, conflicts with the clear finding of the Court in *Tyco II*.  *Tyco II*, 264 F. Supp. 2d at 1331.  The Court finds Labor's reliance on the incomplete customer surveys does not have a rational basis in law or fact.

Additionally, this Court holds that the Government's position in the *First Remand Results*

to deny Plaintiffs' eligibility because the only shift in production was a domestic shift to an affiliated Tyco Electronics plant in Harrisburg, Pennsylvania, was not substantially justified. The Court finds that this position was not substantially justified because the record supporting the *First Remand Results* did not indicate that Labor conducted any further investigation on remand regarding the alleged domestic transfer. *Tyco II*, 264 F. Supp. 2d at 1331-32. As the Court found in *Tyco II*, Labor merely relied on its initial investigation, which it conceded to be insufficient, to support this position. *Id*. at 1332.

The only support for the Government's position in denying certification after the *First Remand Results* were unverified statements from untitled Tyco Electronics company officials and the two customer surveys discussed above. *See* Notes to Conference Call concerning Tyco Electronics, Fiber Optics Division, Glen Rock, Pennsylvania with Steve Reynosa and Sue Mullins and others on January 14, 2002 (Conf. Admin. R. at 66-67); Letter from Tom Christner Responding For Shane NorthCraft [sic], Tyco Electronics, Middleton [sic], Pennsylvania to Elliot Kushner of 11/13/02 (Conf. Supplemental Admin. R. at 4-5). Although Labor may appropriately rely on the unverified statements of company officials, *see, e.g.*, *Int'l Union, UAW Local 1283 v. Reich*, 20 F. Supp. 2d 1288, 1297 n.15 (Ct. Int'l Trade 1998); *United Steel Workers of Am., Local 1082 v. McLaughlin*, 15 Ct. Int'l Trade 121, 122-23 (1991), such unverified statements "will not amount to substantial evidence if [they are] contradicted by logic or other pertinent information in the record." *Former Employees of Pittsburgh Logistics Systems, Inc., v. United States Sec'y of Labor*, No. 02-387, slip op. at 15, 2003 Ct. Int'l Trade LEXIS 18, at *24 (Ct. Int'l Trade Feb. 28, 2003). As the Court found in *Tyco II*, the statements of the Tyco Electronics official were allegedly contradicted by the information that Plaintiffs submitted, which Labor failed to even

consider. *Tyco II*, 264 F. Supp. 2d at 1331. Additionally, the Court noted other contradictions in the sales information provided by Tyco Electronics. *See Tyco II*, 264 F. Supp. 2d at 1331 (comparing Conf. Admin. R. at 34 with Conf. Supplemental Admin. R. at 5). This Court holds that it was not reasonable for the Government to defend the position that Plaintiffs were not eligible based upon such tenuous factual support.

### 2. Second Remand Results.

As mentioned above, in its response to Plaintiffs' second 56.2 Motion, the Government conceded that a second remand was appropriate because Labor failed to address the information from Plaintiffs. Def.'s Mem. in Partial Opp'n to Pls.' Cmts. on Def.'s Neg. Determination on Remand at 8. On remand, this Court ordered that "Labor should detail its analysis and evaluation of the [] information [submitted by Plaintiffs, and] conduct any further investigation that might be necessary to resolve any inconsistencies that are revealed in its analysis of th[at] information versus the statements of Tyco Electronics company officials." *Tyco II*, 264 F. Supp. 2d at 1330. In the *Second Remand Results*, Labor certified Plaintiffs and stated that

> On the current, court-ordered remand, the Department requested and obtained new and additional information and clarification from the company regarding plant production shifts to Mexico. Upon careful review of the new data, it has been determined [that] more than a negligible portion of production was shifted to Mexico during the relevant period.
>
> Conclusion
> After careful review of the additional facts obtained on the current remand, I conclude that there was a shift of production to Mexico that contributed importantly to the worker separations and sales or production declines at the subject facility.

*Second Remand Results* at 3.

As the Court observed in *Tyco III*, Labor failed to follow this Court's specific instructions

on remand. *Tyco III*, 2004 Ct. Int'l Trade LEXIS 33, at \*12-\*13 (comparing *Tyco II*, 264 F. Supp. 2d at 1333 (directing Defendant to consider :1) the [] information submitted by Plaintiffs; 2) the propriety of conducting an import analysis to support the information contained in the customer surveys; 3) the seemingly contradictory information provided by Tyco Electronics regarding sales; and 4) the arguments made in Plaintiffs' 56.1 Motion regarding a shift in production in light of the data contained in the information [submitted by Plaintiffs]"), *with Second Remand Results*, 68 Fed. Reg. 41,185 (failing to mention any information obtained from Plaintiffs and granting certification based on "new and additional information and clarification from the company")).

Although Plaintiffs are not challenging Labor's position in the *Second Remand Results*, the Court notes that the *Second Remand Results* fail to provide any additional facts or legal analysis that would aid the Court in determining the reasonableness of Labor's prior position to deny Plaintiffs' eligibility for certification. Defendant did not file with the Court a supplemental administrative record, and so the Court is left to assume that Labor reached its conclusion in the *Second Remand Results* to certify the Plaintiffs based upon the evidence discussed above.

## C. Plaintiffs' Application for Fees is Granted with Certain Adjustments and Deductions.

The Court grants Plaintiffs' application for fees and expenses with certain adjustments and deductions. First, the Court finds that Plaintiffs have failed to set forth sufficient "special factors" that would entitle Plaintiffs to an award of fees based on an hourly rate above the $125 cap set in the EAJA. Second, this Court finds that a cost of living adjustment to the $125 statutory hourly rate is appropriate. Third, the Court awards fees for work performed by paralegals and summer associates at the prevailing market rate. Fourth, the Court deducts the 58.1 hours worked in relation to Defendant's delay in filing the *First Remand Results* because Plaintiffs were already

compensated for that work in *Tyco II*. Fifth, the Court finds that the other fees requested are reasonable with the exception of a few entries detailed below. Finally, the Court finds that most of the fees requested for work completed after the Plaintiffs were certified by Labor are compensable under the EAJA.

**1. Plaintiffs' Fees are Capped at the Statutorily Hourly Rate.**

Under the EAJA, "'fees and other expenses' includes . . . reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.)" 28 U.S.C. § 2412(d)(2)(A)(ii). In *Pierce v. Underwood*, the Supreme Court established that "special factor refers to attorneys having some distinctive knowledge or specialized skill <u>needed for the litigation in question</u>." *Pierce*, 487 U.S. at 572 (emphasis added). Plaintiffs contend that lead counsel, Mr. Jimmie Reyna, has specialized skills in the field of international trade law which "have been essential in securing trade adjustment assistance" for Plaintiffs. Pls.' Br. at 21. Mr. Reyna's expertise in the field of international law is not questioned in this case; however, this Court finds that such specialized skills were not needed for this litigation. As Defendant notes, the Court encourages all attorneys admitted at the Court to volunteer their time as court appointed counsel in trade adjustment assistance cases. Def.'s Resp. at 23. The basic litigation skills needed for these types of cases apply "to a broad spectrum of litigation and thus are considered to be covered by the baseline statutory rate." *Phillips v. Gen. Servs. Admin.*, 924 F.2d 1577, 1584 (Fed. Cir. 1991). This Court holds that Plaintiffs are entitled

to recover the statutory rate with the cost of living adjustment discussed below.

**2. Plaintiffs Are Allowed to Recover Fees at the Statutory Hourly Rate Plus a Cost of Living Adjustment.**

This Court determines that "an increase in the cost of living" justifies a higher fee in this case. *See* 28 U.S.C. § 2412(d)(2)(A)(ii). Judicial discretion in granting cost of living adjustments "effectuates Congress' intent... to provide adequate compensation notwithstanding inflation." *Payne v. Sullivan*, 977 F.2d 900, 903 (4th Cir. 1992) (quoting Sullivan v. Sullivan, 958 F.2d 574, 578 (4th Cir. 1992)). As Plaintiffs contend, the COLA in this case is calculated using the Consumer Price Index for all Urban Consumers ("CPI-U"). *See Kerin v. USPS*, 218 F.3d 185, 194 (2d Cir. 2000) ("[t]he district court may choose to apply a cost of living adjustment to [the statutory rate], as measured by the Consumer Price Index") (citing 28 U.S.C. § 2412(d)(2)(A); Harris v. Sullivan, 968 F.2d 263, 265 (2d Cir. 1992)); s*ee also Headlee v. Bowen*, 869 F.2d 548, 550-52 (10th Cir. 1989) ("[t]he Consumer Price Index is sufficient evidence upon which to calculate the cost of living . . . for the purpose of determining an EAJA fee award" (citation omitted)). Defendant does not challenge Plaintiffs' calculations of the statutory rate with the COLA based on the CPI-U. However, after reviewing Plaintiffs' calculations and the CPI-U information available for the Northeast Urban Area from the Bureau of Labor Statistics, this Court finds that Plaintiffs' calculations must be adjusted slightly to account for mathematical corrections. *See* Consumer Price Index - All Urban Consumers, Northeast Urban Area, *available at* http://www.bls.gov/cpi/ (last visited Aug. 23, 2004).

As detailed in Plaintiffs' application, the base CPI-U (not seasonally adjusted) for March 1996 was 155.7; the CPI-U for Northeast Urban Areas for 2002 was 188.2; for 2003 it was 193.5;

and the average for the first four months of 2004 was 197.68.  Pls.' Br. at 23 (citing Pls.' Attach.

E); s*ee also* Consumer Price Index - All Urban Consumers, Northeast Urban Area, *available at*

http://www.bls.gov/cpi/ (last visited Aug. 23, 2004); *Kerin*, 218 F.3d at 194 ("the hourly rate . . .

should only be increased by the corresponding Consumer Price Index for each year in which the

legal work was performed" (citations omitted)).  Accordingly, attorney fees awarded for 2002 will

be calculated at the hourly rate of $151.09 ($125.00 at 155.7 equates to $151.09 at 188.2); fees for

2003 will be calculated at the hourly rate of $155.35 ($125.00 at 155.7 equates to $155.35 at

193.5); and attorney fees 2004 will be calculated at the hourly rate of $158.70 ($125.00 at 155.7

equates to $158.70 at 197.68) .

     **3.**   **Plaintiffs are Allowed Under the EAJA to Recover for Fees for Work Performed by Summer Associates and Paralegals at the Prevailing Market Rate.**

Defendant does not challenge the prevailing market rate that Plaintiffs claim for paralegal

services: $95.00 per hour for 2002; $100.00 per hour for 2003.  Pls.' Br. at 22-24; Proforma 1 at

1.  Likewise, Defendant does not challenge the market rate claimed for summer associates, $95.00

to $115.00 per hour.  Pls.' Br. at 22-24; Proforma 1 at 1.  Rather, Defendant claims that Plaintiffs

should not be allowed to recover fees for work performed by summer associates.  Def.'s Resp. at

24.  This Court has rejected the argument that summer associate and law clerk work is not

compensable under the EAJA.  *See Humane Soc'y*, 159 F. Supp. 2d at 712-13.  The court has held

that, in accordance with the Supreme Court's decision in *Missouri v. Jenkins*, 491 U.S. 274, 287

(1989), "the appropriate compensation for paralegals, law clerks, and summer associates should

be determined by the marketplace."  *Humane Soc'y*, 159 F. Supp. 2d at 712; *see also Earth Island*

*Inst.*, 942 F. Supp. at 615.  However, as detailed in section 5 below, the Court takes into

consideration Defendant's argument that certain hours expended by the summer associates are unreasonable and excessive for the work performed.

**4. Plaintiffs are Not Allowed Double-Recovery for Fees Already Awarded by this Court in Tyco I.**

In *Tyco I*, this Court awarded Plaintiffs $3,728.75 in attorneys fees for the work associated with responding to Defendant's dilatory conduct in filing the *First Remand Results* and in conducting its investigation after the voluntary remand. *See Tyco I*, 259 F. Supp. 2d at 1250-53 ("Plaintiffs' counsel spent 48.1 hours working on their responses to Labor's two out of time requests. . . . At the hourly rates normally charged by Plaintiffs' counsel, the total attorney's fees amount to $7,457.50. . . . Although Plaintiffs' submitted fees are reasonable, the Court finds that other factors weigh in favor of reducing the amount of the sanctions against Defendant. . . . This Court awards attorney's fees to Plaintiffs in the amount of $3,728.75, one half of the amount requested." (internal citations omitted)). Defendant contends that Plaintiffs were compensated for this work when Labor complied with this Court's order to pay such fees. Def.'s Resp. at 28. Plaintiffs do not contest this fact and consent to a reduction in fees of $3,728.75 as already awarded. Pls.' Reply to Def.'s Resp. To Pls.' Application for Att'y's Fees and Expenses at 21. Therefore, the Court directs that a reduction of $3,728.75 representing fees already awarded shall be reflected in the overall total granted to Plaintiffs.

**5. The Hours Listed in the Proforma 1 and Proforma 2 Statements are Reasonable with the Exception of Certain Entries Discussed Below.**

This Court finds that the hours requested in Plaintiffs' application are reasonable with the exception of the entries addressed below. Based on the inadequate work descriptions provided for the following entries, the Court declines to award fees for the hours claimed:

- 1.1 hours claimed for work by Mr. Benjamin R. Lindorf[3] on June 11, 2002 (Proforma 1 at 3 (no description provided for the hours worked));

- 0.2 hours claimed for work by Mr. Francisco Orellana on June 26, 2002 (Proforma 1 at 4 (description reads "DELETE"));

- 0.6 hours claimed for work by Mr. Francisco Orellana on April 14, 2003 (Proforma 1 at 9 (description reads "Review of Court's docket"));

- 5.9 hours claim for work performed by Mr. Benjamin R. Lindorf on November 20, 21, 24 and 25, 2003 (Proforma 1 at 11 (descriptions read "Prepare EJA proposal for settlement purposes"; "Prepare EIA Proposal for settlement purposes; send report letter to court"; "Prepare EIA Proposal for settlement purposes; send report letter to court"; "Prepare EIA Proposal for settlement purposes; send report letter to court; call client to give update"));

- 2.6 hours claimed for work performed by Mr. Jimmie Reyna on January 30, 2004 (Proforma 1 at 13 (description reads "Research"));

- 1.3 hours claimed for work performed by Mr. Francisco Orellana on April 12, 2004 (Proforma 2 at 4 (description reads "Attention to file")).

"An applicant must itemize fees and expenses <u>with sufficient specificity</u> to allow the court to determine what work is being claimed." *Traveler Trading Co. v. United States*, 713 F. Supp. 409, 415 (Ct. Int'l Trade 1989) (emphasis added) (citing Naporano Iron & Metal Co. v. United States, 825 F.2d 403, 404 (Fed. Cir. 1987)). Courts have held that vague or ambiguous entries "render it difficult for the court to ascertain the reasonableness of the hours billed." *Am. Wrecking Corp. v. Sec'y of Labor*, 364 F.3d 321, 329 (D.C. Cir. 2004). Even when comparing these entries listed in Plaintiffs' Proforma statements against the docket of this case and the record before the Court, the Court is unable to determine what work is being claimed. Thus, this Court deducts 10.6 attorney hours (0.2 in 2002; 6.5 in 2003; 3.9 in 2004) and 1.1 summer associate hours (at the $115 per

---

[3] In their brief, Plaintiffs note that Mr. Lindorf worked as a summer associate in 2002 and then joined the firm as an associate in September 2003. (Pls.' Br. at 21 n.3.) The Court takes this into consideration when making its adjustments to the fees requested.

hour rate) from Plaintiffs' application for these inadequate entries.

The Court finds that the hours requested by Plaintiffs are reasonable for the tasks

performed with the exception of the hours sought (1) in connection with drafting Plaintiffs' first

56.1 motion and (2) in connection with drafting Plaintiffs' application for fees under the EAJA.

First, the Court finds that the summer associate hours sought in connection with the drafting of

Plaintiffs' first 56.1 Motion are excessive. For the six weeks prior to filing Plaintiffs' first 56.1

brief, Plaintiffs' application lists 150.8 hours worked by summer associates in connection with

drafting Plaintiffs' first 56.1 brief,[4] in addition to the 45.7 hours listed for attorney work on the

---

[4] The 150.8 hours listed for summer associates in connection with drafting the 56.1 brief are as follows: 0.5 hours of work performed by Mr. Benjamin R. Lindorf on May 21, 2002 (description reads "Began preliminary work on standards of proof and eligibility determination for TAA []."); 1.5 hours of work performed by Mr. Benjamin R. Lindorf on May 28, 2002 (description reads "Research statutory requirements for [TAA] under NAFTA implementation."); 6.5 hours of work performed by Mr. Benjamin R. Lindorf on May 29, 2002 (description reads "Researched the standards of review for agency determination of NAFTA-TAA; began outline on findings."); 3.2 hours of work performed by Mr. Benjamin R. Lindorf on June 7, 2002 (description reads "Began work on brief - outlined format for brief (motion for judgment on agency record) and wrote introduction and standard of review."); 3.1 hours of work performed by Mr. Benjamin R. Lindorf on June 10, 2002 (description reads "Drafted statement of the case, reviewed administrative record (public version); did preliminary research on 2-step production shifts."); 6.2 hours of work performed by Mr. Benjamin R. Lindorf on June 17, 2002 (description reads "Research pointed arguments on brief; met with J. Reyna to go over argument structure; research case law. "); 4.8 hours of work performed by Mr. Benjamin R. Lindorf on June 19, 2002 (description reads "Research other databases, began memorandum drafting data table from Tyco DOL research."); 4.8 hours of work performed by Mr. Benjamin R. Lindorf on June 20, 2002 (description reads "Finished Tyco data; preliminary analysis; contacted DOL to see about accessing records; statute or case review; began argument section of brief."); 8.1 hours of work performed by Mr. Benjamin R. Lindorf on June 21, 2002 (description reads "Research case law and agency determinations."); 7.2 hours of work performed by Mr. Benjamin R. Lindorf on June 24, 2002 (description reads "Worked with J. Minarczik on project; finished outline; meeting with J. Minarczik and F. Orellana."); 6.0 hours of work performed by Ms. Jennifer A. Minarczik on June 24, 2002 (description reads "Research for NAFTA-TAA brief; develop outline for Part II. Research "substantial evidence" and legislative history; meeting with B. Lindorf & F. Orellana."); 7.5 hours of work performed by Mr. Benjamin R. Lindorf on June 25, 2002 (description reads "Completed first draft of argument section."); 9.3 hours of work performed by

brief.[5]  Proforma 1 at 3-5.  The Court finds that the summer associate hours requested in

---

Ms. Jennifer A. Minarczik on June 25, 2002 (description reads "Research and draft Part II of NAFTA-TAA brief; consolidate Parts with B. Lindorf; create new outline; meet with J. Reyna for approval and direction."); 13.7 hours of work performed by Mr. Benjamin R. Lindorf on June 26, 2002 (description reads "Merged briefs and completely finished 2nd draft with J. Minarczik."); 13.3 hours of work performed by Ms. Jennifer A. Minarczik on June 26, 2002 (description reads "Continue research on NAFTA-TAA memo.  Revise statement of facts, create table of contents, cross-check rules, revise/create confidential record."); 15.1 hours of work performed by Mr. Benjamin R. Lindorf on June 27, 2002 (description reads "Third draft of brief."); 11.4 hours of work performed by Ms. Jennifer A. Minarczik on June 27, 2002 (description reads "Revise brief; work on table of authorities; draft conclusion; rule 51 statement."); 14.2 hours of work performed by Mr. Benjamin R. Lindorf on June 28, 2002 (description reads "Hawks - final draft and filed copy."); 14.4 hours of work performed by Ms. Jennifer A. Minarczik on June 28, 2002 (description reads "Finish brief for filing in Court of International Trade.  Create Table of Contents, revise.").

[5] The 45.7 hours listed for attorneys in connection with drafting the 56.1 brief are as follows: 1.8 hours of work performed by Mr. Francisco Orellana on June 11, 2002 (description reads "Meeting w/ summer associate Lindorf to strategize and draft brief; research for brief."); 1.0 hours of work performed by Mr. Francisco Orellana on June 12, 2002 (description reads "Meeting w/ partner to review strategy for brief, review results to date."); 2.4 hours of work performed by Mr. Jimmie Renya on June 17, 2002 (description reads "Attention to 56.1 brief."); 0.7 hours of work performed by Mr. Francisco Orellana on June 17, 2002 (description reads "Analysis of TAA issues for court case."); 2.4 hours of work performed by Mr. Jimmie Reyna on June 18, 2002 (description reads "56.1 Brief"); 3.7 hours of work performed by Mr. Francisco Orellana on June 20, 2002 (description reads "Review and analysis of ITC data for fiber optics; review and analysis of cases."); 3.6 hours of work performed by Mr. Francisco Orellana on June 21, 2002 (description reads "Meeting with summer associate; preparation for brief; analysis of cases; analysis of Federal Register Notices."); 2.4 hours of work performed by Mr. Jimmie Reyna on June 24, 2002 (description reads "Attention to Brief."); 2.3 hours of work performed by Mr. Francisco Orellana on June 24, 2002 (description reads "Review and analysis of record; draft of outline and meeting with summer associates regarding draft to brief."); 3.5 hours of work performed by Mr. Jimmie Reyna on June 25, 2002 (description reads "Attention to, review results to date; assign tasks; 56.1 Brief."); 4.6 hours of work performed by Mr. Jimmie Reyna on June 27, 2002 (description reads "Attention to Brief 56.1, review drafts, male changes."); 3.5 hours of work performed by Mr. Francisco Orellana on June 27, 2002 (description reads "Redlining for document; research of cases concerning substantial evidence."); 5.0 hours of work performed by Mr. Jimmie Reyna on June 28, 2002 (description reads "56.1 Brief"); 8.8 hours of work performed by Mr. Francisco Orellana on June 28, 2002 (description reads "Research and analysis of cases; draft of order; memorandum and motion; organization of brief; drafting of public version; delivery to post office; APO compliance.").

connection with the drafting of Plaintiffs' first 56.1 brief to be unreasonable. The Court reduces

the summer associate hours awarded for this work by half; thus, the Court deducts 75.4 hours

from those requested for summer associates in Plaintiffs' application.

Second, the Court finds that the total hours requested for work on Plaintiffs' EAJA brief is

also excessive. Plaintiffs' Proforma statements indicate that Plaintiffs' counsel worked 100.1

hours on drafting the EAJA brief, including 67.9 attorney hours[6] and 38.5 summer associate

---

[6] Plaintiffs' statements reflect that counsel spent 17 hours in 2003 and 50.9 hours in 2004 working on the EAJA application. (Proforma 1 at 9-10, 12; Proforma 2 at 3-4.) The 17 hours listed in connection with drafting the EAJA application in 2003 are as follows: 2.5 hours of work performed by Mr. Francisco Orellana on July 30, 2003 (description reads "Review of Federal Circuit case and preparation for drafting application for fees."); 1.9 hours of work performed by Mr. Francisco Orellana on July 31, 2003 (description reads "Meeting with summer associate Brad Nowak to discuss assignment on application for attorney's fees ; review of information."); 2.4 hours of work performed by Mr. Francisco Orellana on August 1, 2003 (description reads "Research and review of cases concerning application of EAJA funds."); 1.6 hours of work performed by Mr. Francisco Orellana on August 4, 2003 (description reads "Review draft of application for EAJA funds."); 1.6 hours of work performed by Mr. Francisco Orellana on August 5, 2003 (description reads "Review of draft of application for EAJA funds."); 1.8 hours of work performed by Mr. Francisco Orellana on August 6, 2003 (description reads "Review of draft of application for EAJA funds."); 1.6 hours of work performed by Mr. Francisco Orellana on August 7, 2003 (description reads "Attention to EAJA brief."); 0.6 hours of work performed by Mr. Francisco Orellana on August 8, 2003 (description reads "Attention to EAJA brief."); 1.6 hours of work performed by Mr. Francisco Orellana on August 11, 2003 (description reads "Editing of EAJA brief."); 0.9 hours of work performed by Mr. Francisco Orellana on August 12, 2003 (description reads "Editing of EAJA brief; report to partner on EAJA application."); 0.5 hours of work performed by Mr. Francisco Orellana on December 12, 2003 (description reads "Analysis of issues concerning EAJA fees and preparation of status of case for Court.").

The 50.9 hours listed in connection with drafting the EAJA application for 2004 are as follows: 1.8 hours of work performed by Mr. Francisco Orellana on February 12, 2004 (description reads "Research EAJA.");1.9 hours of work performed by Mr. Francisco Orellana on February 13, 2004 (description reads "Attention to brief for EAJA.")); 1.1 hours of work performed by Mr. Benjamin R. Lindorf on February 18, 2004 (description reads "Update EAJA brief with new cases and new facts."); 1.6 hours of work performed by Mr. Francisco Orellana on February 18, 2004 (description reads "Review of brief for attorney's fees."); 0.2 hours of work performed by Mr. Benjamin R. Lindorf on February 19, 2004 (description reads "Update EAJA brief with new cases and new facts."); 1.7 hours of work performed by Mr. Francisco Orellana on

hours.[7]  Although fees are generally allowed for preparation of the EAJA application, *see Keely v.*

February 19, 2004 (description reads "Research on attorney's fees under EAJA and inclusion of new cases into brief."); 1.9 hours of work performed by Mr. Francisco Orellana on April 2, 2004 (description reads "Attention to file; telephone conference with client; and initial preparation for EAJA brief."); 2.3 hours of work performed by Mr. Francisco Orellana on April 5, 2004 (description reads "Research, draft, edit EAJA brief."); 1.7 hours of work performed by Mr. Francisco Orellana on April 8, 2004 (description reads "Research, draft, edit EAJA brief."); 2.1 hours of work performed by Mr. Francisco Orellana on April 9, 2004 (description reads "Research, draft, edit EAJA brief; telephone conference with Ms. Hamilton; attention to litigation file."); 6.0 hours of work performed by Mr. Jimmie Reyna on April 11, 2004 (description reads "Draft, edit EAJA brief."); 5.6 hours of work performed by Mr. Jimmie Reyna on April 13, 2004 (description reads "Draft, edit EAJA brief."); 1.8 hours of work performed by Mr. Francisco Orellana on April 13, 2004 (description reads "Research on Equal Justice Act."); 4.5 hours of work performed by Mr. Jimmie Reyna on April 14, 2004 (description reads "Draft, edit EAJA brief."); 2.7 hours of work performed by Mr. Francisco Orellana on April 15, 2004 (description reads "Research, draft, edit EAJA brief."); 0.5 hours of work performed by Mr. Francisco Orellana on April 16, 2004 (description reads "Research, draft, edit EAJA brief."); 1.8 hours of work performed by Mr. Francisco Orellana on April 20, 2004 (description reads "Research on CIT cases involving EAJA fees.")); 1.1 hours of work performed by Mr. Francisco Orellana on April 21, 2004 (description reads "Research on Federal cases involving EAJA fees."); 1.8 hours of work performed by Mr. Jimmie Reyna on April 22, 2004 (description reads "Review progress on EAJA brief."); 1.0 hours of work performed by Mr. Francisco Orellana on April 22, 2004 (description reads "Research on cases involving attorney's fees."); 0.9 hours of work performed by Mr. Francisco Orellana on April 23, 2004 (description reads "Attention to file and EAJA brief."); 0.8 hours of work performed by Mr. Jimmie Reyna on April 27, 2004 (description reads "Outline EAJA strategies."); 2.1 hours of work performed by Mr. Francisco Orellana on April 27, 2004 (description reads "Attention to legislative intent on EAJA."); 2.5 hours of work performed by Mr. Francisco Orellana on April 28, 2004 (description reads "Attention to and review cases for EAJA brief."); 1.5 hours of work performed by Mr. Francisco Orellana on April 29, 2004 (description reads "Attention to cases on EAJA brief.").

   [7]  The 38.5 hours listed for summer associates in connection with drafting the EAJA application are as follows: 3.0 hours of work performed by Mr. Brad Nowak on July 30, 2003 (description reads "Reviewed CIT materials, researched Westlaw for cases related to the recovery of pro bono claims under EAJA.  Researched CIT cases for EAJA recovery."); 7.0 hours of work performed by Mr. Brad Nowak on July 31, 2003 (description reads "Reviewed CIT materials, researched Westlaw for cases related to the recovery of fees for specialized counsel; drafted memorandum in support of attorney fees under EAJA.  Reviewed CIT cases and Court of Appeals cases for specialized attorney fee."); 4.2 hours of work performed by Mr. Brad Nowak on August 1, 2003 (description reads "Researched Westlaw for cases related to the recovery of fees for substantial justification; edited draft memorandum in support of fees."); 7.3 hours of work performed by Mr. Brad Nowak on August 4, 2003 (description reads "Edited draft

*Merit Systems Protection Bd.*, 793 F.2d 1273, 1275 (Fed. Cir. 1986) ("[Plaintiff] is entitled to an

award of attorney fees and expenses . . . including fees and expenses for preparing the application

under the EAJA." (citation omitted)); *Devine v. Sutermeister*, 733 F.2d 892, 899 (Fed. Cir. 1984)

("[The Government] concedes that the time spent drafting the EAJA fee application is recoverable

if [the plaintiff] is otherwise entitled to recover." (citations omitted)), the Court finds that the

hours requested are unreasonable for the task performed.  The fees sought for preparing Plaintiffs'

EAJA application are approximately one-sixth of the total fees requested.[8]  The Court finds this to

be excessive for the twenty-five page memorandum plus attachments that was filed in support of

Plaintiffs' application.  Therefore, the Court exercises its discretion to deduct one-third of the 67.9

attorney hours requested for preparing Plaintiffs' EAJA application: 22.63 hours (6.78 in 2003;

15.85 in 2004).

**6.  Plaintiffs are Entitled to Recover Fees for the Work Performed After Certification and Before a Final Judgment was Entered in This Case.**

Sixth, the Court holds that Plaintiffs are entitled to recover fees for the work performed

---

memorandum, corrected citations, shepardized current cited cases, reviewed recent CIT."); 5.3 hours of work performed by Mr. Brad Nowak on August 5, 2003 (description reads "Edited draft memorandum, corrected citations, reviewed Court of Appeals cases which granted fees."); 4.5 hours of work performed by Mr. Brad Nowak on August 6, 2003 (description reads " Edited draft memorandum, edited record citations, reviewed EAJA filing form."); 5.5 hours of work performed by Mr. Brad Nowak on August 7, 2003 (description reads "Edited draft memorandum, called CIT for docket materials, reviewed EAJA annotations, research Rule 16 and EAJA recovery."); 1.7 hours of work performed by Mr. Brad Nowak on August 8, 2003 (description reads "Shepardized cases, cite checked, edited corrected memo.").

[8] Plaintiffs request $119,966.50 in fees.  (Pls.' Br. at 22.)  Using Plaintiffs' hourly rates, the fees associated with preparing Plaintiffs' EAJA application total $18,966.50.  (*See* Proforma 1 at 9-10, 12; Proforma 2 at 3-4) (accounting for 18.7 hours at $365 per hour; 30.9 hours at $180 per hour; 17 hours at $160 per hour; 1.3 hours at $155 per hour; and 38.5 hours at $95 per hour).)

after certification and before a final judgment was entered in this case.  Contrary to Defendant's

contentions, the fees requested by Plaintiffs for work performed after June 25, 2003, the day on

which Labor certified Plaintiffs, does not reflect "post-judgment activity."  *See* Def.'s Resp. at 25.

Rather, the final judgement in this case was entered on April 14, 2004, pursuant to proposed

judgment orders submitted by the parties on March 19, 2004, and March 26, 2004.  After the

Plaintiffs were certified, Plaintiffs counsel drafted Plaintiffs EAJA application, which, as

discussed above, is compensable activity under the EAJA, and worked with Defendant's counsel

to reach an agreement regarding the final judgment to be entered in this case.  The Court holds

that such work is not precluded from recovery under the EAJA.  However, the Court declines to

award the full amount of fees requested for work performed after Labor certified Plaintiffs.  First,

the Court finds that the 10.2 hours worked by Mr. Francisco Orellana on reviewing Labor's

*Second Remand Results* and drafting Plaintiffs' <u>one paragraph</u> response to be excessive for the

task performed.[9]  The Court exercises its discretion and deducts one-half of the hours requested,

5.1 hours, from the award.  The Court also declines to award fees for 2.7 hours of worked

performed after this Court entered final judgment in this case.[10]   While acknowledging that some

---

[9] *See* Proforma 1 at 9 (1.9 hours of work on July 10, 2004 (description reads "Review of Labor's Revised Remand Determination; report to Jimmie Reyna on Labor's papers")); (2.8 hours of work on July 15, 2004 (description reads "Preparation of Response to Labor's Revised Determination Remand")); (1.9 hours of work on July 18, 2004 (description reads "Drafting of Response to Defendant's Revised Determination on Remand")); (1.3 hours of work on July 21, 2004 (description reads "Editing of Response to Defendant's Revised Determination on Remand")); (2.3 hours of work on July 25, 2004 (description reads "Editing of clients' response to Labor's Revised Determination on Remand.  Drafting of letter and certificates to CIT.  Filing of document").

[10] *See* Proforma 2 at 4 (1.2 hours of work performed by Mr. Jimmie Reyna on April 14, 2004 (description reads "Review and analyze Court's decision") (1.5 hours of work performed by Mr. Francisco Orellana on April 14, 2004 (description reads "Attention to decision rendered by

types of post-judgment activity are compensable as necessarily tied to the initial case, this Court finds time spent reviewing the underlying decision was not necessary to prepare the case at hand. *Jenkins by Jenkins v. Mo.*, 127 F.3d 709, 716-17 (8th Cir. 1997) ("Some types of post-judgment activities are readily seen to be necessary adjuncts to the initial litigation, whereas other types of activites are more like a new, separate lawsuit and require a fee determination independent of the underlying case.")

**E.  Final Calculation of Fees and Expenses Awarded.**

Plaintiffs' statements reflect 707.8 hours worked: 479.7 hours for attorneys; 219.7 hours for summer associates; and 8.4 for paralegals.  *See* Proforma 1; Proforma 2.  The 138 attorney hours claimed in 2002 are reduced by the 43 hours already compensated for in *Tyco I* for work performed that year, and reduced by the 0.2 hours for inadequate descriptions in the entries.  The 200.3 attorney hours claimed in 2003 are reduced by the 12.5 hours already compensated for in *Tyco I* for work performed that year, 6.5 hours for inadequate descriptions in the entries, and 6.78 hours for excessive fees for Plaintiffs' EAJA application.  The 141.4 attorney hours claimed in 2004 are reduced by 3.9 hour for inadequate descriptions in the entries, 15.85 hours for excessive fees for Plaintiffs' EAJA application; 5.1 hours for excessive hours regarding Plaintiffs' response to Labor's *Second Remand Results*, and 2.7 hours for noncompensable post-judgment work.  The 38.5 summer associate hours claimed at the $95 per hour rate stand.  The 181.2 summer associate hours claimed at the $115 per hour rate are reduced by 1.1 hours for inadequate descriptions in the entries and reduced by 75.4 hours for excessive fees relating to the first 56.1 brief.  The 1 hour of paralegal work claimed at $100 per hour stands.  The 7.4 hours of paralegal work claimed at $95

court")).)

per hour are reduced by the 1.3 hours already compensated in *Tyco I*.  The following chart reflects

the final fee calculations:

| Topic | Hours Claimed | Hours Deducted | Hours Allowed | Rate | Fee Allowed |
|---|---|---|---|---|---|
| Attorney Hours 2002 | 138 | <43.2> | 94.8 | $151.09 | $14323.33 |
| Attorney Hours 2003 | 200.3 | <25.78> | 174.52 | $155.35 | $27111.68 |
| Attorney Hours 2004 | 141.4 | <27.55> | 113.85 | $158.70 | $18067.99 |
| Summer Associate Fees at $95 per hour | 38.5 | <0> | 38.5 | $95.00 | $3657.50 |
| Summer Associate Fees at $115 per hour | 181.2 | <76.5> | 104.7 | $115.00 | $12040.50 |
| Paralegal Fees at $95 per hour | 7.4 | <1.3> | 6.1 | $95.00 | $579.50 |
| Paralegal Fees at $100 per hour | 1 | <0> | 1 | $100.00 | $100.00 |
|  |  |  |  |  |  |
| **TOTAL** | 707.8 | <174.33> | 533.47 |  | $75880.50 |

Although this Court declines to award post-judgment fees for reviewing the underlying

decision, see section D.6, the attorney's fees of $27.20 associated with this case are compensable.

*Schuenemeyer v. United States*, 776 F.329, 333 (Fed. Cir. 1985) (holding attorney fees incurred in

the preparation of an application for fees compensable under the EAJA).  The reasonableness of

Plaintiffs' claimed expenses is not challenged: the Court awards the full $27.20 claimed.  The

Court arrives at a final award of $75,907.70.

CONCLUSION

This Court holds that Plaintiffs' application for fees and expenses under the EAJA meets

the necessary requirements and is granted because Defendant's position in this litigation was not

substantially justified and no other reasons make an award unjust.  *See* 28 U.S.C. § 2412(d).  This

Court awards attorney fees based upon the statutory cap of $125 per hour with a cost of living

adjustment, and declines to award any fees for certain unreasonable and excessive entries included in Plaintiffs' application as detailed above.  Plaintiffs are awarded $75,907.70 for fees and expenses under the EAJA.

/S/ Gregory W. Carman
Gregory W. Carman
Judge

Dated: September 16, 2004
       New York, New York