**Slip Op. 08-102**

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                      :

FORMER EMPLOYEES OF
    BMC SOFTWARE, INC.,          :

                      _Plaintiffs_,    :

                                        Court No. 04-00229

                      v.            :

UNITED STATES SECRETARY OF LABOR,  :

                      _Defendant_.   :
_____

[Defendant's Motion for Partial Reconsideration denied.]

                                           Dated:  September 26, 2008

      Miller & Chevalier Chartered (James B. Altman and Daniel P. Wendt); Kathleen T. Wach, Of Counsel; for Plaintiffs.

      Gregory G. Katsas, Assistant Attorney General; Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Jane C. Dempsey); Stephen R. Jones, Office of the Solicitor, U.S. Department of Labor, Of Counsel; for Defendant.

## MEMORANDUM OPINION

RIDGWAY, Judge:

      In this action, former employees of Houston, Texas-based BMC Software, Inc. ("the Workers") successfully challenged the determination of the U.S. Department of Labor denying their petition for certification of eligibility for trade adjustment assistance ("TAA") benefits. _See generally_ Former Employees of BMC Software, Inc. v. U.S. Sec'y of Labor, 30 CIT ____, 454 F. Supp. 2d 1306 (2006) (BMC I).  The Workers were subsequently awarded attorneys' fees and expenses under the Equal Access to Justice Act ("EAJA"), in Former Employees of BMC Software,

Inc., 31 CIT ____, 519 F. Supp. 2d 1291 (2007) (BMC II).[1]  Following supplemental submissions

by the parties, the precise amount of the award was calculated and an appropriate order entered.  *See*

Former Employees of BMC Software, Inc., 31 CIT ____,  2007 WL 4181696 (2007) (BMC III).

     Now pending before the Court is Defendant's Motion for Partial Reconsideration ("Def.'s

Motion"), in which the Government urges that the language of BMC II be modified in three places,

to delete criticism of positions taken by the Government.[2]   For the reasons outlined below,

Defendant's Motion is denied.

## I.  **Standard of Review**

     Rule 59(a)(2) of the Rules of this Court permits rehearing or reconsideration for any of the

reasons for which rehearing or reconsideration has been granted in suits in equity in the courts of

the United States.  *See* USCIT R. 59(a)(2).[3]  The disposition of such a motion for rehearing or

---

[1]Relying on the Court of Appeals' decision in Richlin, BMC II permitted counsel to the plaintiff Workers to recover for paralegal/legal assistant time not as part of fees, but only "as expenses *at the cost to the attorney*."  *See* BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1343-45 (*quoting* Richlin Sec. Serv. Co. v. Chertoff, 472 F.3d 1370, 1381 (Fed. Cir. 2006)) (emphasis added in BMC II).  The Supreme Court has since reversed the Court of Appeals' decision, holding that paralegal/legal assistant services are reimburseable at prevailing market rates. *See generally* Richlin Sec. Serv. Co. v. Chertoff, ____ U.S. ____, 128 S. Ct. 2007 (2008).

[2]The plaintiff Workers did not participate in the briefing on Defendant's Motion.  *But see* Plaintiffs' Application for Fees and Expenses Pursuant to the Equal Access to Justice Act at 7-11, 21-22 (criticizing Government for duplicity and lack of candor, as discussed in section II.A., *infra*).

     Further, the current counsel of record representing the Government in this matter did not participate in the prior proceedings – either on the merits of the case or the fee litigation.  Counsel advises that the instant motion was filed at the request of the Director of the National Court Section of the Civil Division of the U.S. Department of Justice.  *See* Def.'s Motion at 2 n.1.

[3]"On its face, Rule 59 provides for rehearing in actions which have been tried and gone to judgment. . . . Nevertheless, it has been held that the 'concept of a new trial under Rule 59 is broad

reconsideration is committed to "the sound discretion of the court." United States v. Gold Mountain

Coffee, Ltd., 8 CIT 336, 336, 601 F. Supp. 212, 214 (1984) (citations omitted).

The purpose of rehearing or reconsideration is not to allow a losing party to relitigate the

merits of a case. Belfont Sales Corp. v. United States, 12 CIT 916, 917, 698 F. Supp. 916, 918

(1988), *aff'd*, 878 F.2d 1413 (Fed. Cir. 1989). Rather, rehearing or reconsideration is granted only

to "rectify[ ] a significant flaw in the conduct of the original proceeding." Gold Mountain Coffee,

8 CIT at 336, 601 F. Supp. at 214 (quotation marks and citation omitted). Thus, "[t]he major

grounds justifying reconsideration are an intervening change of controlling law, the availability of

new evidence, or the need to correct a clear error or prevent manifest injustice." Doe v. New York

City Dep't of Social Servs., 709 F.2d 782, 789 (2d Cir. 1983) (quotation marks and citations

omitted). As the court has previously put it, the purpose of rehearing or reconsideration is "to direct

the Court's attention to some material matter of law or fact which it has overlooked in deciding a

case, and which, had it been given consideration, would probably have brought about a different

result." Target Stores v. United States, 31 CIT ____, ____, 471 F. Supp. 2d 1344, 1349 (2007)

(*quoting* Agro Dutch Indus. Ltd. v. United States, 29 CIT 250, 253-54 (2005), *rev'd on other*

*grounds*, 167 Fed. Appx. 202 (Fed. Cir. 2006)).

---

enough to include a rehearing of any matter decided by the court without a jury.'" Nat'l Corn
Growers Ass'n v. Baker, 9 CIT 571, 585, 623 F. Supp. 1262, 1274 (1985) (*quoting* Timken Co. v.
United States, 6 CIT 76, 77, 569 F. Supp. 65, 67 (1983) (*quoting* Wright & Miller)), *rev'd on other*
*grounds*, 840 F.2d 1547 (Fed. Cir. 1988). *See also* Gainey v. Brotherhood of Railway & Steamship
Clerks, 303 F.2d 716, 718 (3d Cir. 1962) (noting that courts "have experienced no difficulty in
concluding that a motion for rehearing or reconsideration made . . . after the entry of an appealable
order is within the coverage of Rule 59"); In re Ionian Shipping Co., 49 F.R.D. 334, 336 (S.D.N.Y.
1969) (noting that "[i]t is clear that the concept of a 'new trial' used in Rule 59 has been interpreted
to encompass the rehearing of a motion").

In sum, a court ordinarily will not disturb its prior decision unless it is "manifestly erroneous." Gold Mountain Coffee, 8 CIT at 337, 601 F. Supp. at 214 (*quoting* Quigley & Maynard, Inc. v. United States, 61 C.C.P.A. 65, 496 F.2d 1214 (1974)). Rehearing or reconsideration is fundamentally "a means to correct a miscarriage of justice." Nat'l Corn Growers Ass'n v. Baker, 9 CIT 571, 585, 623 F. Supp. 1262, 1274 (1985).

## II. **Analysis**

In its Motion for Reconsideration, the Government takes exception to language in three parts of BMC II, which criticized positions taken by the Government and referred generally to the potential for sanctions in certain circumstances. *See* Def.'s Motion at 1-2, 4-5 (*referring to* BMC II, 31 CIT at ____ n.50, ____ n.99, ____ & n.108, 519 F. Supp. 2d at 1326 n.50, 1354 n.99, 1364 & n.108).

Of course, as the Government properly notes, the Court in fact did not impose sanctions. *See* Def.'s Motion at 1. Indeed, neither the Government nor its counsel was ever even threatened with sanctions. *Cf.* NISUS Corp. v. Perma-Chink Systems, Inc., 497 F.3d 1316, 1320 (Fed. Cir. 2007) (holding that judicial statements criticizing a lawyer – no matter how harshly – but which are not accompanied by a sanction or findings are not directly appealable). The Government nevertheless expresses concern that BMC II's "citations to Rule 11 and other allusions to potentially sanctionable conduct . . . may have significant repercussions beyond this individual case and detrimentally affect both the attorneys' reputations and potentially the vigor and creativity of advocacy by other members of the bar." *See* Def.'s Motion at 1-2. The Government therefore asks that the language at issue be deleted from the opinion.

To be sure, counsel for the Government – like private counsel – must be free to zealously represent the interests of their clients. However, all lawyers must balance that obligation against other (sometimes competing) ethical obligations. Thus, for example, counsel must take care to "properly temper[] enthusiasm for a client's cause with careful regard for the obligations of truth, candor, accuracy, and professional judgment that are expected of them as officers of the court." Oliveri v. Thompson, 803 F.2d 1265, 1267 (2d Cir. 1986); *see also*, *e.g.*, ABA Model Rules of Professional Conduct (2008), Rule 3.3 ("Candor Toward the Tribunal"), Comment [4] (emphasizing that "[t]he underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case"); Amoco Oil Co. v. United States, 234 F.3d 1374, 1378 (Fed. Cir. 2000) (criticizing counsel's "fail[ure] to cite, much less distinguish, clearly governing case law" as potential violation of Rule 3.3).[4]

---

[4]Indeed, government lawyers play a unique role in the administration of justice, and therefore have some special duties. "A government lawyer 'is the representative not of an ordinary party to a controversy,' the Supreme Court said long ago in a statement chiseled on the walls of the Justice Department, 'but of a sovereignty whose obligation . . . is not that it shall win a case, but that justice shall be done.'" Freeport-McMoran Oil & Gas Co. v. Federal Energy Regulatory Comm'n, 962 F.2d 45, 47 (D.C. Cir. 1992) (Mikva, C.J.) (*quoting* Berger v. United States, 295 U.S. 78, 88 (1935), and emphasizing that the solemn duty to do justice applies "with equal force to the government's civil lawyers"). *See* Trout v. Garrett, 780 F. Supp. 1396, 1421 n.60 (D.D.C. 1991) (noting inscription above entrance to Office of the Attorney General of the U.S.: "The United States wins its point whenever justice is done its citizens in the courts.").

*See generally*, *e.g.*, New York Code of Professional Responsibility (2007), Ethical Consideration 7-14 (stating that "[a] government lawyer in a civil action or administrative proceeding has the responsibility to seek justice and to develop a full and fair record, and should not use his or her position or the economic power of the government to harass parties or to bring about unjust settlements or results") (mirroring ABA Model Code of Professional Responsibility EC 7-14); In re Lindsey, 158 F.3d 1263, 1273 n.4 (D.C. Cir. 1998) (citing EC 7-14, and noting that "the government lawyer in a civil action must 'seek justice' and avoid unfair settlements or results"); Williams v. Sullivan, 779 F. Supp. 471, 472 (W.D. Mo. 1991) (explaining that government lawyer "has a duty beyond just zealously representing her client"; "there is a special duty imposed on

Each of the Government's three objections is addressed in turn below. For the reasons set forth there, the Government's Motion for Reconsideration is denied.

### A. Foonote 50

The Government first takes exception to footnote 50 of BMC II, which appears in a section of the opinion addressing the Government's objections to the plaintiff Workers' claims for fees for legal services rendered after the Workers had filed their comments on the Labor Department's remand determination (which certified the Workers as eligible to apply for TAA benefits). *See generally* Def.'s Motion at 5-7; BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1321-26.

The Government had opposed an award of fees for services rendered late in the proceeding, arguing that the efforts of the Workers' counsel "only protracted the litigation after certification." *See* BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1321 (*quoting* Defendant's Response to Plaintiffs' Application for Attorney Fees and Expenses ("Def.'s EAJA Opposition")). According to the Government, the Workers' counsel had "engage[d] the Court and the Government in a needless colloquy regarding the hypothetical circumstance of a miscalculation of benefits," which the Government argued "[the] Court lacks jurisdiction to determine in any event." *See* BMC II, 31 CIT

---

government lawyers to 'seek justice and to develop a full and fair record'"); Bonanza Trucking Corp. v. United States, 10 CIT 314, 321 n.18, 642 F. Supp. 1170, 1176 n.18 (1986) (noting that EC 7-14 mandates "that a government lawyer in an administrative proceeding has the responsibility to develop a full and fair record"); Jones v. Heckler, 583 F. Supp. 1250, 1256 n.7 (N.D. Ill. 1984) (quoting EC 7-14, and emphasizing that "counsel for the United States has a special responsibility to the justice system"). *See also*, *e.g.*, City of Los Angeles v. Decker, 18 Cal.3d 860, 871, 558 P.2d 545, 551 (1977) (explaining that "[o]ccupying a position analogous to a public prosecutor, [a government lawyer in the civil arena] is possessed of important governmental powers that are pledged to the accomplishment of one objective only, that of impartial justice") (internal quotation marks omitted).

at ____, 519 F. Supp. 2d at 1321 (*quoting* Def.'s EAJA Opposition).

However, BMC II pointedly observed that "the Government . . . [had] no one but itself to blame for the post-certification briefing" to which it objected. *See* BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1321. As BMC II explained at some length, the post-certification briefing was spawned by the Government's seeming attempts to distance itself from representations that its counsel made early in these proceedings to induce the Workers to consent to a lengthy extension of time for the filing of the results of the Labor Department's remand investigation. *See generally* BMC II, 31 CIT at ____, ____, ____, 519 F. Supp. 2d at 1322, 1325-26, 1363-64.

Specifically, "[c]ounsel for the Government induced the Workers' consent to the requested extension of time – and the Court's entry of an order granting that extension – with express, unequivocal assurances that 'in the event petitioners are certified in this case, the petitioners would be entitled to receive full TRA benefits [*i.e.*, income support payments, known as "Trade Readjustment Allowance" payments] regardless of the date they are certified.'" *See* BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1322 (quotations omitted). But, when the Labor Department's remand results eventually issued, there was no language reflecting the unconditional assurances that the Government had previously given. *See* BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1322.

As BMC II explained, when the Workers urged the Court to "expressly order[ ], in accordance with Defendant's representation, that Plaintiffs, having been certified, are entitled to receive full TRA benefits, regardless of the date of their certification," the Government refused to amend the certification and responded (in essence) that the Court lacked jurisdiction to enforce the representations that the Government's counsel had made to the Court and to the Workers. *See* BMC

II, 31 CIT at ____, 519 F. Supp. 2d at 1322 (quotation omitted).[5]  The Workers nevertheless

ultimately succeeded in obtaining all benefits to which they were entitled.  *See* BMC II, 31 CIT at

____, ____ n.50, 519 F. Supp. 2d at 1299, 1326 n.50; *see also* BMC I, 30 CIT at ____, 454 F. Supp.

2d at 1350.

> Against this backdrop, footnote 50 of BMC II observed:
>
> Fortunately, [because the Workers succeeded in obtaining full benefits,] there was ultimately no need here to test the limits of the Court's jurisdiction *vis-a-vis* that of the state courts.  *See generally* BMC, 30 CIT at ____, 454 F. Supp. 2d at 1347 (acknowledging that "the statutory scheme generally vests the state courts with jurisdiction over disputes concerning the specific TAA benefits to which individual members of a certified group of former employees are entitled") (citations omitted). *Nor was it ultimately necessary to consider the need for sanctions, contempt proceedings, or other action against the Government or its counsel.*  As noted above, the Workers advised the Court that – armed with the post-certification memoranda filed by the Government in this action interpreting the complex provisions of the TAA statute and regulations and confirming that the delay in the Workers' certification would have no effect on the benefits to which they were entitled – they no longer foresaw any insurmountable obstacles to their receipt of the full measure of TAA benefits.  *See id.*, 30 CIT at ____, 454 F. Supp. 2d at 1349-50 (citation and footnote omitted).

*See* BMC II, 31 CIT at ____ n.50, 519 F. Supp. 2d at 1326 n.50 (emphasis added).  The italicized

sentence is the focus of the Government's objection.

The Government devotes the bulk of its brief on reconsideration of this point to arguing the

metes and bounds of the Court's jurisdiction in TAA cases.  The gravamen of the Government's

---

[5]As BMC II emphasizes, the Workers' concerns that their receipt of benefits would be negatively affected by the Government's protracted delays in certification were by no means "trumped up."  *See* BMC II, 31 CIT at ____ & n.43, 519 F. Supp. 2d at 1322-23 & n.43 (and authorities cited there); BMC I, 30 CIT at ____ n.63, 454 F. Supp. 2d at 1341 n.63 (explaining in detail the potentially devastating effects of delayed certification on benefits received by workers); *see also* BMC I, 30 CIT at ____ n.69, 454 F. Supp. 2d at 1349 n.69; Former Employees of Tyco Elecs. v. U.S. Dep't of Labor, 28 CIT 1571, 1575-76, 350 F. Supp. 2d 1075, 1080-81 (2004).

motion is that it was "entirely reasonable in arguing that the Court lacks authority to dictate whether plaintiffs would receive 'full' trade readjustment allowance[] benefits." *See* Def.'s Motion at 5-7. But the Government's argument is wide of the mark.

As a full and fair reading of BMC II makes clear, the potential risk of "sanctions, contempt proceedings, or other action against the Government or its counsel" was not attendant to the Government's position on the Court's jurisdiction *per se*. Indeed, BMC I acknowledged that "the statutory scheme generally vests the state courts with jurisdiction over disputes concerning the specific TAA benefits to which individual members of a certified group of former employees are entitled." BMC I, 30 CIT at ____, 454 F. Supp. 2d at 1347 (citations omitted).[6]

Thus, contrary to the Government's implication, the concern here was not the Government's position on the jurisdiction of the Court. The concern was the Government's arguably duplicitous conduct – its seeming attempt to "have its cake and eat it too." In order to secure a benefit for the Government (*i.e.*, the Workers' consent to a lengthy extension of time for the filing of the Labor Department's remand results), the Government's counsel expressly represented to the Workers and to the Court – in writing – that, if the Workers were ultimately certified, "[they] would be entitled to receive full TRA benefits regardless of the date they are certified." But then, after the Workers were certified, the Government sought to renege on that warranty, taking the position that –

---

[6]Although BMC I acknowledged that – as the Government maintains – "the statutory scheme generally vests the state courts with jurisdiction over disputes concerning the specific TAA benefits to which individual members of a certified group of former employees are entitled" (*see* BMC I, 30 CIT at ____, 454 F. Supp. 2d at 1347 (citations omitted)), BMC II further pointed out that "it is far from clear that the extent of the benefits available to a *group* of petitioning workers pursuant to a Labor Department TAA certification is a matter for the state courts (rather than the Court of International Trade)." *See* BMC II, 31 CIT at ____ n.49, 519 F. Supp. 2d at 1325 n.49. Of course, it was this latter issue which was of concern to the plaintiff Workers in this case.

notwithstanding its earlier representations – the level of benefits to be received by the Workers was

a matter for state authorities and state courts.[7]  As the Workers emphasized, however:

> Plaintiffs . . . have a reasonable expectation as litigants to have a measure of
> reliability in their dealings with the government [as does the Court] . . . . The
> Government should not have assured Plaintiffs of their entitlement to full benefits
> if the Government knew it would ultimately take the position that its representation
> (designed to induce an extension [of time]) could not be enforced.  In such a
> scenario, the Court must have the authority to hold the Government to its words.

*See* BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1325-26 (*quoting* Plaintiffs' Reply to Defendant's

Response to Plaintiffs' Comments on Remand Results).

The Government cites no authority for the proposition that a litigant is free to make

representations to the Court and to other parties to secure something of benefit, and then to later

disavow them – particularly where other parties have relied on them to their detriment.

It may be  – as the Government has insisted in this case, and elsewhere – that the Court could

not have ordered the Labor Department to certify that, notwithstanding the delay in their

certification, the Workers were "entitled to receive full TRA benefits."  But it is beyond cavil that

a court has the inherent authority, where necessary, to hold litigants and counsel responsible for their

statements made in the course of litigation, whether through "sanctions, contempt proceedings, or

other action."  *See generally* BMC I, 30 CIT at ____, 454 F. Supp. 2d at 1348 (and authorities cited

there) (discussing court's inherent powers); Precision Specialty Metals, Inc. v. United States, 315

F.3d 1346, 1357-58 (Fed. Cir. 2003) (discussing "the inherent power of the court to control and

---

[7]*See*, *e.g.*, BMC I, 30 CIT at ____ n.70, 454 F. Supp. 2d at 1349 n.70 (*quoting* Defendant's
Memorandum of Law in Response to the May 12, 2005 Order, which argued: "[I]t is inappropriate
for the Court to inquire into matters beyond its jurisdiction.  To the extent that any petitioners
experience perceived difficulties in the receipt of benefits after certification has issued, any such
grievance would be a matter for state courts.").

specify the standards of lawyers who appear before it") (citation omitted).[8]  To the extent that

footnote 50 of <u>BMC II</u> may operate to "chill . . . enthusiasm or creativity" by  constraining counsel

from promising what they cannot deliver, and by ensuring that they are both crystal clear and

completely candid in all communications with opposing counsel and with the Court, that will be all

to the good.  *See* Def.'s Motion at 7 (arguing that "Rule 11 'is not intended to chill an attorney's

enthusiasm or creativity in pursuing factual or legal theories.'") (citation omitted).

In short, contrary to the Government's assertions, nothing in footnote 50 of <u>BMC II</u> was

"undeserved and manifestly unjust."  The Government's motion to strike that language from the

opinion is therefore denied.

---

[8]In this case, the Government sought to portray federal authorities as powerless (relative to state authorities) in the administration of TAA benefits, even if federal authorities' delays in certification threatened the benefits to which the Workers would otherwise be entitled.

But, in other similar cases, under pressure from the court as well as the workers' counsel, federal authorities have taken affirmative action to ensure that their delays did not negatively affect the TAA benefits received by the workers in those cases.  *See* <u>BMC I</u>, 30 CIT at ____ n.63, 454 F. Supp. 2d at 1341 n.63 (discussing <u>Tyco</u>, <u>Oxford Automotive</u>, and <u>Ericsson</u>, where federal officials granted so-called "<u>Tyco</u> Waivers" to assure full benefits for workers in those cases); *see also* <u>Tyco</u>, 28 CIT at 1575-76, 350 F. Supp. 2d at 1080-81 (discussing issuance of "<u>Tyco</u> Waiver" in that case). This suggests that the Government recognizes that it is, in fact, accountable to the court in such situations.

Moreover, in at least one critical respect, this case is even stronger than those other cases. In this case, counsel for the Government made express representations – in writing – to the Court and to the Workers' counsel.  In the other cases, the Government had made no such representations, written or otherwise.  *See* <u>BMC I</u>, 30 CIT at ____ n.69, 454 F. Supp. 2d at 1349 n.69 (discussing Government's failure in other cases to "affirmatively alert the court and all parties in advance to the potentially devastating effect of litigation delays on the benefits ultimately awarded").

## B.  **Footnote 99**

The Government also challenges footnote 99 of <u>BMC II</u>,[9] which appears in a section of the

opinion addressing the plaintiff Workers' claim for a "special factor" enhancement of their award

of attorneys' fees – a claim which the Government opposed.  *See generally* Def.'s Motion at 7-9;

<u>BMC II</u>, 31 CIT at _____, 519 F. Supp. 2d at 1346-55.

As <u>BMC II</u> observed, "[t]he 'special factor' most commonly invoked in an attempt to justify

enhanced attorneys' fees is that specified in the EAJA itself – 'the limited availability of qualified

attorneys for the proceedings involved.'" <u>BMC II</u>, 31 CIT at _____, 519 F. Supp. 2d at 1347 (*quoting*

28 U.S.C. § 2412(d)(2)(A)(ii)).  <u>BMC II</u> noted that, in <u>Pierce v. Underwood</u>, the Supreme Court

explained that the "special factor" of "the limited availability of qualified attorneys" "must refer to

attorneys 'qualified for the proceedings' in some specialized sense, rather than just in their general

legal competence."  <u>BMC II</u>, 31 CIT at _____, 519 F. Supp. 2d at 1347 (*quoting* <u>Pierce v.</u>

<u>Underwood</u>, 487 U.S. 552, 572 (1988)).

In addition, <u>BMC II</u> observed that <u>Pierce v. Underwood</u> narrowly construed the EAJA's

reference to "the limited availability of qualified attorneys" as concerning only situations where an

attorney possesses "some distinctive knowledge or specialized skill needful for the litigation," and

that the Supreme Court further held that "an extraordinary level of the general lawyerly knowledge

and ability useful in all litigation" does not suffice to warrant a "special factor" enhancement.  <u>BMC</u>

<u>II</u>, 31 CIT at _____, 519 F. Supp. 2d at 1347 (*quoting* <u>Pierce v. Underwood</u>, 487 U.S. at 572).  <u>BMC</u>

---

[9]The Government's Motion for Reconsideration at one point erroneously identifies the footnote at issue as "footnote 91."  *See* Def.'s Motion at 9; *but see id*. at 5 (referring to "footnote 99").

II pointed out that Pierce v. Underwood suggested that the requisite "distinctive knowledge or specialized skill" might include "an identifiable practice specialty such as patent law, or knowledge of foreign law or language." BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1347 (*quoting* Pierce v. Underwood, 487 U.S. at 572).

As BMC II emphasized, "[a]nalysis of the caselaw reveals that Courts of Appeals across the country have taken divergent approaches to the 'limited availability of qualified attorneys' as a special factor." BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1347 (citations omitted). BMC II observed that "[m]uch of the debate surrounds whether technical specialties within the field of administrative law constitute 'distinctive knowledge or specialized skill[s]' within the meaning of Pierce v. Underwood." BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1347-48 (citations omitted). BMC II then carefully surveyed the state of the existing law on point, concluding that "[a]ny attempt to synthesize the jurisprudence on point compels the conclusion that the courts are truly 'all over the map,' and that *some* precedent can be mustered to support almost *any* position – particularly if one draws on the early caselaw." BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1351 (citations omitted).

BMC II also analyzed the relevant caselaw of the U.S. Court of Appeals for the Federal Circuit, as well as the pertinent decisions of courts subject to review by that court. *See* BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1352-53. In one of the cases discussed, the Court of Appeals directly (albeit succinctly) addressed the issue of legal expertise as a "special factor," granting an enhancement based specifically on counsel's "*capability* and willingness" to handle appeals of adverse decisions by the Merit Systems Protection Board. *See* BMC II, 31 CIT at ____, 519 F.

Supp. 2d at 1352-53 (*analyzing* Gavette v. Office of Personnel Management, 788 F.2d 753, 754

(Fed. Cir. 1986) (emphasis added)).

In its EAJA Opposition, the Government asserted that it is "well-settled that . . . where

knowledge of general administrative law enables an attorney [to] prosecute a case, courts have

denied EAJA fees above the statutory cap." *See* BMC II, 31 CIT at ____ n.99, 519 F. Supp. 2d at

1354 n.99 (*quoting* Def.'s EAJA Opposition). The Government there urged the Court to follow the

Tyco decision, a TAA case in which another judge of this Court denied a "special factor"

enhancement. *See* BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1353-54 (*citing* Def.'s EAJA

Opposition); Tyco, 28 CIT at 1578-79, 1582-83, 1589-92, 350 F. Supp. 2d at 1083, 1086, 1092-93.[10]

The Government's EAJA Opposition did not cite, much less discuss or seek to distinguish, the

caselaw of the Court of Appeals for the Federal Circuit.

Against that backdrop, footnote 99 of BMC II observed:

> The Government asserts that it is "well-settled that . . . where knowledge of general
> administrative law enables an attorney [to] prosecute a case, courts have denied
> EAJA fees above the statutory cap.". . . . The Government's strategic use of the
> phrase "well-settled" could be read to be calculated to convey an impression of
> unanimity (or, at least, near-unanimity) – the impression that the law on legal
> expertise and "special factors" is a good deal more uniform and consistent than it
> actually is. . . . [H]owever, counsel have a duty of candor toward the court; and
> misrepresenting the state of the law is potentially sanctionable conduct.

BMC II, 31 CIT at ____ n.99, 519 F. Supp. 2d at 1354 n.99.

In its Motion for Reconsideration, the Government emphasizes that the key word in its

statement concerning "well-settled" law is the word "general" (as in "knowledge of *general*

---

[10]As BMC II acknowledged, Tyco was then "the sole decision addressing a claim for a
'special factors' enhancement in a TAA case." *See* BMC II, 31 CIT at ____, 519 F. Supp. 2d at
1353-54 (*discussing* Tyco, 28 CIT at 1589-92, 350 F. Supp. 2d at 1092-93).

administrative law"). *See* Def.'s Motion at 8. But nowhere in its opposition to the plaintiff Workers' request for attorneys' fees did the Government address the fact that – as BMC II noted – the real debate in such cases "surrounds whether technical specialties *within the field of administrative law* constitute 'distinctive knowledge or specialized skill[s]' within the meaning of Pierce v. Underwood." *See* BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1347-48.[11]

More to the point, to support its assertion that it is "well-settled" that – "where knowledge of general administrative law enables an attorney to prosecute a case" – no "special factor" enhancement is appropriate, the Government's opposition cited two cases. *See* Def.'s EAJA Opposition at 35 (*citing* Atlantic Fish Spotters Ass'n v. Daley, 205 F.3d 488, 492 (1st Cir. 2000); Truckers United For Safety v. Mead, 329 F.3d 891, 895 (D.C. Cir. 2003)). But, in fact, neither of the two cases stands for the proposition that the Government claims.

Nowhere in either case did either court state that a "special factor" enhancement should be denied "where knowledge of general administrative law enables an attorney to prosecute a case." Indeed, neither case even involved a claim of mere expertise in *general* administrative law. In

_____

[11]The Government's EAJA Opposition identifies no case in which a party has sought a "special factors" enhancement based solely on expertise in – to use the Government's words – "*general* administrative law." (Emphasis added.) Nor did the Court's extensive independent research locate any such case.

Rather, as explained in one of the three cases that the Government cited in the relevant section of its EAJA Opposition, "lawyers practicing administrative law typically develop expertise in a particular regulated industry, whether energy, communications, railroads, . . . firearms," or some other field. *See* Truckers United for Safety v. Mead, 329 F.3d 891, 895 (D.C. Cir. 2003) (*cited in* Def.'s EAJA Opposition at 35-36). Thus, the battleground in EAJA cases is typically whether counsel's expertise in some specialized field of administrative law justifies an enhancement to the fee award – *not* whether an enhancement is warranted by counsel's "knowledge of general administrative law." *Compare* Def.'s EAJA Opposition at 35.

Atlantic Fish Spotters, counsel claimed special expertise in "fisheries law"; and in Truckers United, counsel claimed special expertise in "the safety aspects of the trucking industry." *See* Atlantic Fish Spotters, 205 F.3d at 491; Truckers United, 329 F.3d at 892. Thus, as the Government itself noted in its EAJA Opposition, the denial of a "special factor" enhancement in both cases was actually based on court findings that the particular special expertise at issue was not required for the litigation in question. *See* Def.'s EAJA Opposition at 35 (noting that Atlantic Fish Spotters denied "special factor" enhancement "where expertise in fisheries law was not 'essential' to challenge constitutionality of a Department of Commerce regulation prohibiting certain means of harvesting tuna," and that Truckers United denied "special factor" enhancement because "specialized expertise in safety aspects of trucking industry . . . was 'neither needful nor critical' in action challenging authority of Department of Transportation Inspector General to engage in compliance investigation").[12]

The third case on which the Government's opposition relied – Tyco – similarly did not involve a "special factor" enhancement claim based on mere "knowledge of general administrative law." To the contrary, the Tyco plaintiffs sought a "special factor" enhancement based on lead counsel's "specialized skills in the field of international trade law." *See* Tyco, 28 CIT at 1579, 1590, 350 F. Supp. 2d at 1083, 1092. Thus, again, as the Government itself here acknowledged, the Tyco Court denied a "special enhancement" because "counsel's expertise in the field of international law was 'not needed for this litigation.'" *See* Def.'s EAJA Opposition at 35 (*quoting* Tyco, 28 CIT at

---

[12]In Atlantic Fish Spotters, the court actually went even further, adding that "even if a fisheries expert *had* been shown to be 'necessary' to litigate this case competently, there is no finding nor any evidence to show that lawyers so skilled were unavailable at the presumptive statutory rate of $125 per hour." Atlantic Fish Spotters, 205 F.3d at 492-93.

1590, 350 F. Supp. 2d at 1092).

Accordingly, contrary to the Government's claims in its EAJA Opposition, this Court has *never* "specifically held" that TAA cases "do not require any specialized skills or knowledge." *See* Def.'s EAJA Opposition at 35 (original emphasis omitted). Under the circumstances, the Tyco Court's statement that "[t]he basic litigation skills needed for these types of cases apply 'to a broad spectrum of litigation and thus are considered to be covered by the baseline statutory rate'" was mere dicta. *See* Tyco, 28 CIT at 1591, 350 F. Supp. 2d at 1092-93 (quotation omitted).

In sum, contrary to the Government's implication, none of the cases on which it relied actually held that a "special factor" enhancement should be denied "where knowledge of general administrative law enables an attorney to prosecute a case" – the proposition which the Government identified as "well-settled." Contrary to the Government's statements, Tyco certainly did not "specifically *h[o]ld* that TAA cases do not require any specialized skills or knowledge." *See* Def.'s EAJA Opposition at 35 (initial emphasis added; original emphasis omitted). Moreover, although each of the three cases on which the Government relied – Atlantic Fish Spotters, Truckers United, and Tyco – involved a claim of some specialized expertise, the Government elected not to brief that issue. Nor did the Government cite, much less discuss or seek to distinguish, the caselaw of the Court of Appeals for the Federal Circuit – including, in particular, Gavette, a case in which the Court of Appeals granted a "special factor" enhancement based specifically on counsel's "*capability* and willingness" to handle appeals of adverse decisions by the Merit Systems Protection Board. *See* Gavette, 788 F.2d at 754 (emphasis added).

In short, particularly in the context of the cases that it cited, the Government's

characterization of the law as "well-settled" was ill-considered. Under the circumstances, it simply cannot be said that the Government's EAJA Opposition fairly summarized the relevant law. Nothing about the language of footnote 99 is "clearly erroneous and manifestly unjust." The Government's motion to strike that language from the opinion is therefore denied.

## C. Footnote 108 and Related Text

The Government's third and final challenge is to footnote 108 of BMC II, and related text in the main body of the opinion, which appear in the section of the opinion addressing the plaintiff Workers' claim for a cost of living adjustment ("COLA") to the statutory hourly rate for attorneys' fees. *See generally* Def.'s Motion at 9-11; BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1364-67.

As BMC II explains, the Government opposed the request for a COLA, asserting that such an adjustment was "not warranted," and pointing to two cases – Phillips v. General Services Administration and Baker v. Bowen. *See* BMC II, 31 CIT at ____ & n.108, 519 F. Supp. 2d at 1364-65 & n.108 (*citing* Phillips v. General Services Administration, 924 F.2d 1577 (Fed. Cir. 1991); Baker v. Bowen, 839 F.2d 1075, 1084 (5th Cir. 1988)).

The entirety of the Government's argument on this point read:

Plaintiffs' arguments and requests for a cost of living adjustment should be rejected because the policy of the statute is to pay non-enhanced fees for legal services actually rendered. Phillips v. General Services Administration, 924 F.2d 1577, 1583 (Fed. Cir. 1991). The statute "is not designed to reimburse reasonable fees without limit." *Id*. at 1584. In addition, the Federal Circuit explained that:

[i]n Pierce, the Supreme Court also rejected as "special factors" (1) the limited availability of attorneys with an extraordinary level of general lawyerly knowledge and ability useful in all litigation, (2) the novelty and difficulty of the issues, (3) the work and ability of counsel, and (4) the results obtained, because all of these factors are

> applicable to a broad spectrum of litigation and thus are considered
> to be covered by the baseline statutory rate of [then] $75 per hour,
> plus a cost of living increase . . . .

*Id*. at 1584 (*quoting* Pierce, 487 U.S. at 571-73). "The Supreme Court, in Pierce, concluded that Congress did not intend the EAJA to completely cover attorney fees. 'To the contrary, the special factor formulation suggests Congress thought that [the statutory rate] was generally quite enough public reimbursement for lawyers' fees, *whatever the local or national market might be*.'" *Id*. (*quoting* Pierce at 572) (emphasis added).

Therefore, we respectfully request that the Court adhere to the statutory rate and deny an upward adjustment to attorney fees here. *See* Baker v. Bowen, 839 F.2d 1075, 1084 (5th Cir. 1988) (noting that Congress intended for a cost of living adjustment in the EAJA, but that the statute does not "absolutely require" it).

Def.'s EAJA Opposition at 39-40.

BMC II explained at some length why the Government's citation to Phillips is "misleading." *See* BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1364-65. As BMC II observed, for example, the Government's use of italics to highlight the phrase "whatever the local or national market might be" conveys the impression that the holding of Phillips was anti-COLA. *See* BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1364. But, as BMC II explains, a review of Phillips reveals that – in the excerpt on which the Government relies – the Court of Appeals was actually emphasizing the limited circumstances in which *special factors adjustments* are appropriate. *See* BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1364-65 (*discussing* Phillips, 924 F.2d at 1584). Indeed, as BMC II noted, the Court of Appeals expressly held that the Phillips plaintiff's fee award should be calculated by using the statutory rate *increased to reflect a COLA*. *See* BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1365 (*discussing* Phillips, 924 F.2d at 1583-84).

In its Motion for Reconsideration, the Government states that it "neither misquoted the

Phillips decision, nor attempted to hide the fact that this statement [*i.e.*, the quote that "the special factor formulation suggests Congress thought that [the statutory rate] was generally quite enough public reimbursement for lawyers' fees, *whatever the local or national market might be*"] was made in relation to 'special factors' adjustments." *See* Def.'s Motion at 10. But the Government's contentions in its Motion for Reconsideration simply cannot be squared with the argument that it made in its EAJA Opposition, which is quoted above in its entirety.

The Government's EAJA Opposition began with its assertion that "Plaintiffs' arguments and requests for a cost of living adjustment should be rejected *because the policy of the statute is to pay non-enhanced fees for legal services actually rendered*" – a proposition for which the Government cited Phillips. *See* Def.'s EAJA Opposition at 39 (emphasis added). Any reader would be left with the clear and unmistakeable understanding that the holding of Phillips was anti-COLA (or, read most favorably to the Government, silent on the granting of a COLA). But, in fact, as discussed above, the Phillips Court actually granted a COLA – a fact that the Government failed to even acknowledge, much less address.

Nothing in the remainder of the discussion of Phillips in the Government's EAJA Opposition did anything to clarify the misimpression left by the Government's first sentence. *See* Def.'s EAJA Opposition at 39-40 (quoted above). Indeed, as BMC II noted, the Government's italicization of the phrase "whatever the local or national market might be" served only to reinforce the misimpression. *See* BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1364-65.

What is most telling is that, although the issue being briefed was the request for a COLA, and although Phillips in fact addresses the award of a COLA, the Government ignored the COLA

section of the Court of Appeals' opinion, and instead quoted only select excerpts from the section of <u>Phillips</u> addressing "special factor" enhancements.  *Compare* <u>Phillips</u>, 924 F.2d at 1583 (addressing COLA) and at 1583-84 (addressing claim for "special factor" enhancement) *with* Def.'s EAJA Opposition at 39-40 (citing only <u>Phillips</u>, 924 F.2d at 1584).  Simply stated, it was – and is – disingenuous for the Government to suggest that anything in the reasoning (much less the holding) of <u>Phillips</u> supported the Government's opposition to a COLA in this case.

The Government similarly seeks to defend its citation to <u>Baker v. Bowen</u> as purported support for its argument (quoted above) that "the Court [should] adhere to the statutory rate and deny an upward adjustment to attorney fees here."  *See* Def.'s EAJA Opposition at 39-40 (*citing* <u>Baker v. Bowen</u>, 839 F.2d at 1084).  However, as <u>BMC II</u> observed, the Government's EAJA Opposition effectively misrepresented that case.  *See* <u>BMC II</u>, 31 CIT at ____ n.108, 519 F. Supp. 2d at 1364 n.108 (noting that Government's selective quotation of <u>Baker v. Bowen</u> "borders on the sanctionable").  The Government emphasizes that the quotation in its parenthetical accompanying <u>Baker v. Bowen</u> – which noted that "Congress intended for a cost of living adjustment in the EAJA, but . . . the statute does not 'absolutely require' it" – is "entirely true," and argues that it "neither misquoted nor mischaracterized the current law on this issue."  Again, however, any reader of the Government's EAJA Opposition would be left with the clear and unmistakeable understanding that <u>Baker v. Bowen</u> denied a COLA (or, at a minimum, was anti-COLA).  In fact, however, the two sentences immediately following the sentence that the Government quoted belie any such reading, and make it clear that <u>Baker v. Bowen</u> contemplates that a COLA is to be granted as a routine matter of course, "except in unusual circumstances":

Clearly, by mentioning it in the statute, Congress intended that the cost of living be seriously considered by the fee-awarding court. *Except in unusual circumstances*, therefore, if there is a significant difference in the cost of living . . . in a particular locale that would justify an increase in the fee, *then an increase* [*i.e., a COLA*] *should be granted.*

Baker v. Bowen, 839 F.2d at 1084 (emphases added). The Government conveniently failed to quote those two latter sentences. Moreover, the Government made no effort to demonstrate "unusual circumstances" to preclude the award of a COLA here.

In short, the Government's quotations from Phillips and Baker v. Bowen were selective, to say the least. Contrary to the plain implication of the Government's EAJA Opposition, neither of the two cases denied a COLA. Indeed, Phillips granted a COLA, and Baker v. Bowen stands for the proposition that a COLA should be awarded "[e]xcept in unusual circumstances."[13] It is of little moment that the Government may have accurately quoted the snippets on which it relies. In the context in which the Government used them, the quotes are nonetheless misleading. The Court and opposing parties should not be required to read every word of every case cited by the Government in its briefs to ascertain whether it has taken a quotation out of context and, in effect, distorted the facts of the case, the law of the case, or its holding. *See* n.4, *supra*; Precision Specialty Metals, 315

---

[13]In its Motion for Reconsideration, the Government cites for the first time May v. Sullivan, 936 F.2d 176, 177-78 (4th Cir. 1991), which affirmed a trial court's denial of a COLA "when presented with nothing except an increase in the Consumer Price Index," and when "even 'need for a cost of living increase' was not asserted." *See* Def.'s Motion at 10.

Several points are relevant here. First, it is now much too late for the Government to cite authority to support its position. Moreover, the true problem with the Government's EAJA Opposition is not the position that it took, but – rather – that the cases that it cited not only failed to support that position, but, indeed, essentially controverted it. (Further, the Government gave no substantive reason for refusing a COLA, stating only that one was "not required"). Finally, as BMC II makes abundantly clear, May v. Sullivan is largely an outlier, and is not reflective of the current general state of the law on this point. *See* BMC II, 31 CIT at ____, 519 F. Supp. 2d at 1365-66.

F.3d at 1354-57.

Nothing in BMC II's analysis of the Government's opposition to the COLA is either "unwarranted" or "manifestly unjust." Accordingly, the Government's motion to strike footnote 108 and related text from that section of the opinion is also denied.

### III.  **Conclusion**

For all the reasons set forth above, Defendant's Motion for Partial Reconsideration must be, and hereby is, denied.

/s/ Judge Delissa Ridgway

Delissa A. Ridgway
Judge

Dated:  September 26, 2008
         New York, New York